SIDELL v. MISSOURI PAC. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit.    February 23, 1897.)

1. CORPORATIONS—ELECTION OF DIRECTORS—MAJORITY STOCKHOLDERS.
    When the majority of the stockholders of a corporation, combining together, or an individual or corporation holding a controlling interest in the stock, select a body of directors to carry out a predetermined scheme of corporate action, they practically constitute themselves the corporation for that object, and assume the fiduciary relations which the directors themselves occupy; and, if the corporation is insolvent, this trust relation towards creditors forbids the majority stockholders or stockholder from appropriating for their own advantage the property in which all have a community of interest.

2. SAME—RAILROAD COMPANIES—LEASE OF ROAD—LIABILITY OF LESSOR.
    The L. Ry. Co. entered into a contract with the M. Ry. Co. and one L., by which L. was to build the road of the L. Co., and to be paid in bonds, to be issued by the L. Co., and secured by first mortgage of all its property, including rents and profits, and also to be guarantied by the M. Co., which was to acquire a majority of the stock of the L. Co. After the road was built, and the bonds issued, the L. Co. leased the road for 40 years to the M. Co., the lease providing that the annual rent might be paid to the holders of the coupons of the bonds guarantied by the M. Co.   At the meeting at which this lease was authorized, the M. Co. voted a majority of the stock of the L. Co. in favor of its execution.   Subsequently, complainant, who held a claim against the L. Co. derived from L. under the contract for the construction of the road, upon which he had taken judgment against the L. Co., filed a creditors' bill against the M. Co. to compel it to account for the property of the L. Co. taken by it under the lease.  It appeared that the rental value of the property was not equal to the interest on the mortgage, and that the road did not earn expenses.  *Held*, that the M. Co. could acquire no benefit, as against creditors of the L. Co., by taking the lease while that company was insolvent, and would be bound to account to complainant for any profits; but, as there were no profits, the bill was properly dismissed.

3. SAME—RENTALS—PAYMENT TO BONDHOLDERS.
    *Held*, further, that if the M. Co. had been bound to pay rent to the L. Co., a decree for its payment to the complainant would have been appropriate; but, as the rent was directed to be paid to the bondholders, as it lawfully might be, no such decree could be made.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Charles D. Ingersoll and Albert Stickney, for appellant.

Winslow S. Pierce, Rush Taggart, and David D. Duncan, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree dismissing the bill of complaint. The action was a creditors' suit founded on a judgment recovered in April, 1894, for the sum of $31,925, by the complainant against the Leroy & Caney Valley Railroad Company, and an unsatisfied execution thereon, to reach assets in the hands of the Missouri Pacific Railroad Company, alleged to constitute a trust fund for the benefit of the creditors of the Leroy & Caney Valley Railroad Company. The theory of the bill is that the Missouri Pacific Company, being the principal stockholder and in full control of the Leroy Company, took from the latter, without any new consideration, and with the intention of hindering, delaying, and defrauding its creditors, and especially the complainant, a long lease of its entire property, leaving the company entirely insolvent; that the property was a trust fund for the payment of the debts of the Leroy Company, and the value thereof was largely in excess of the amount of the complainant's judgment; that the Missouri Pacific Company is, therefore, liable in equity to account for the value of the fund; and that, as the complainant is the only creditor of the Leroy Company whose debt remains unpaid, the Missouri Pacific Company should be compelled to pay his judgment in full.

It appears by the proofs that the Leroy Company, a corporation organized under the laws of the state of Kansas, entered into a contract dated October, 7, 1885, with the Missouri Pacific Company, also a corporation of that state, and also with one Loss, by which Loss agreed to build a railroad for the Leroy Company between certain designated places in the state of Kansas, and was to be paid therefor by the delivery to him of the first mortgage bonds to be issued by the Leroy Company and secured by a trust deed conveying all its property; and by which the Missouri Pacific Company was to guaranty the payment of the principal and interest of the bonds, and was to acquire the larger part of the stock of the Leroy Company. The complainant's claim grew out of this contract by mesne assignments from Loss. The railroad was built, the mortgage bonds were created, the Missouri Pacific Company guarantied them, and the bonds were applied as contemplated by the contract. The mortgage securing the bonds guarantied by the Missouri Pacific Company covered not only all the physical property and the franchises of the Leroy Company, but also "all the rents, issues, profits, tolls, or other income" thereof. March 3, 1887, the Leroy Company executed to the Missouri Pacific Company a lease of its railroad, together with all its other property, for the term of 40 years, at a rental of $500 per mile of road annually. The lease provided that the Missouri Pacific Company should pay all taxes on the property, and make all the replacements and repairs. The lease contained the following clause:

"It is agreed that, whereas, the party of the second part has guarantied the payment of interest on certain of the first mortgage bonds of the party of the first part, * * * the party of the second part has the right, instead of paying the

rental herein stipulated to be paid directly to the party of the first part, to apply the same to the payment of the coupons on the bonds of the party of the first part as the same become due, and thereby exonerate itself from all liability to pay rent; this right in favor of the party of the second part being one of the considerations on which said guaranty was made."

The rent under the lease was payable semiannually, and at the same time when the semiannual interest upon the bonds would fall due. At the time this lease was executed the Missouri Pacific Company owned and held a majority of the capital stock of the Leroy Company. It voted upon this stock at a corporate meeting of the Leroy Company called to authorize the lease, and by its vote elected the directors who were instructed to cause it to be executed. It took possession of the railroad and all the other leased property under the lease, and has since remained in possession and continued to operate the same.

The proofs justify the inference that the Leroy Company was organized for the purpose of building the railroad as a branch line or feeder to become a part of the system of the Missouri Pacific Company, and that the latter was from the inception of the enterprise a virtual principal. The proofs also show that at the time of the lease the property was not of a rental value equal to the accruing interest upon the outstanding first mortgage bonds. The railroad was doubtless projected and built in the interests of the Missouri Pacific Company with the view of occupying and developing new territory, and in the expectation that at some future time its value as a tributary of the main system would equal or exceed its cost. No evidence was introduced on behalf of the complainant respecting the value of the leased property beyond that supplied by the lease itself. According to the testimony for the defendant, the railroad has been operated by it at a large annual loss, amounting altogether to more than $400,000.

The legal principles applicable to this state of facts are familiar. In a qualified sense, the property of an insolvent corporation is a trust fund for the payment of its creditors. Creditors do not have a specific lien upon the assets any more than they do upon the property of an insolvent individual. If, instead of appropriating them to the payment of its debts, it makes a disposition of them in fraud of creditors, the creditors can reach them, and by proper proceedings acquire a lien upon them, just as they can in the case of an insolvent individual. When insolvency occurs, the directors or managing agents occupy the fiduciary relation towards creditors which they originally sustained towards stockholders. It becomes their duty to preserve the assets, and administer them for the benefit of the creditors. A court of equity will then treat the assets as a trust fund. If they have been distributed among stockholders, or gone into the hands of others than bona fide creditors or purchasers, a court of equity will follow them, and compel them to be applied to the satisfaction of the debts. Curran v. Arkansas, 15 How. 307; Drury v. Cross, 7 Wall. 299; Chicago, M. & St. P. Ry. Co. v. Third Nat. Bank of Chicago, 134 U.

S. 276, 287, 10 Sup. Ct. 550; Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127; Bartlett v. Drew, 57 N. Y. 587; Lyman v. Bonney, 101 Mass. 562; Goodin v. Canal Co., 18 Ohio St. 169.

When a majority of the stockholders of a corporation combine to effect some predetermined scheme of corporate action, and by their vote select a body of directors to carry it out, they practically constitute themselves the corporation for that particular object, and assume the fiduciary relation which the directors themselves occupy. Ervin v. Navigation Co., 27 Fed. 625; Farmers' Loan & Trust Co. v. New York & N. Ry. Co., 150 N. Y. 410, 44 N. E. 1043. The same result follows when one individual, or a corporation, exercises this control by its majority voice and vote. If the corporation is insolvent, this trust relation towards creditors forbids the majority stockholder from appropriating for his own advantage the property or fund in which all have a community of interest. Jackson v. Ludeling, 21 Wall. 616.

The lease of the Leroy Company, having been of its entire property, denuded the corporation for the term of 40 years of any fund for the payment of its debts except that supplied by the lease itself. Having been procured by the Missouri Pacific Company through its control as a majority stockholder of the Leroy Company, if the Leroy Company was insolvent at the time, the Missouri Pacific Company could acquire no benefit by it to the disadvantage of the creditors of the Leroy Company. Unless it constituted an asset as available and valuable to the creditors as was the original trust fund for which it became a substitute, it was an unlawful disposition of the trust fund for the payment of their debts.

It is conceded that the complainant's judgment represents the only unpaid liability of the Leroy Company existing at the time of the execution of the lease. That being so, if the lease was void as to creditors of the Leroy Company, the complainant was entitled to a decree requiring the Missouri Pacific Company to account for the profits derived by the diversion of the original trust fund from its appropriate purpose, and applying the profits to the payment of the judgment. The court below was not asked to set aside the lease, nor does the bill pray for that relief, because, as was stated upon the argument, such a decree would be of no practical value; the prior mortgage would stand, and the leased property would not be of sufficient value to satisfy its lien. Under such circumstances, if it appeared that there were no profits, the court below properly dismissed the bill.

According to the proofs, there were no profits. The property included in the lease was of no appreciable value above the incumbrances upon it. It was insufficient to satisfy the lien of the mortgage. As a part of the Missouri Pacific system it could not earn expenses, to say nothing of fixed charges. Its value at the time the proofs were taken was fairly described in the statement of one of the witnesses for the defendant, a competent judge of railroad values, and in no wise connected with the defendant, who said, "I

take it that the owner of that road would be very glad not to own it." It may be conjectured that at some future time its value may exceed the amount of the incumbrances, but this depends upon many contingencies which cannot be forecast, and a decree would be founded upon mere conjecture.

If there were any obligation on the part of the Missouri Pacific Company as lessee to pay the rent to the Leroy Company, the complainant being the only creditor of the latter corporation, a decree directing payment of the rent towards satisfaction of the judgment would also be appropriate. But there is no such obligation in the lease. Instead, by its terms, the Missouri Pacific Company is at liberty to apply the rental to the payment of interest on the mortgage bonds. It was not unlawful nor inequitable for the two corporations to make provision for that application of the rental. The mortgage, by its terms, gave the holders of the bonds an equitable lien upon the rental for the payment of the interest. The railroad was built with their money. Why were they not entitled to have their interest paid as it fell due? If, incidentally, the Missouri Pacific Company derived a benefit as surety, no one not having higher rights than the bondholders has cause to complain. Certainly the complainant had no equities superior to those of the bondholders. According to the preponderance of authority, in the absence of statutory restrictions an insolvent corporation has the right to prefer one creditor to another in the distribution of its property, the same as has an insolvent individual. Sargent v. Webster, 13 Metc. (Mass.) 497; In re Patent File Co., 6 Ch. App. 83; Catlin v. Bank, 6 Conn. 233; Warner v. Mower, 11 Vt. 385; Coats v. Donnell, 94 N. Y. 168; Wilkinson v. Bauerle, 41 N. J. Eq. 635, 7 Atl. 514; Dabney v. Bank, 3 S. C. 124. If the provision amounted to a preference of the bondholders, it was a legitimate one, and there is no legal theory upon which it can be, in effect, eliminated from the lease, or upon which a decree would be proper directing the Missouri Pacific Company to pay the rental to the complainant.

The case made by the proofs did not entitle the complainant to any substantial relief. The trust fund which he sought to pursue existed only in metaphor. The property of the Leroy Company was of no value to creditors, except the mortgage bondholders, at the time of the lease. The lease did not impair the value of the original fund, nor create a substituted fund of any greater value to creditors who were not bondholders. If it had not been executed, the complainant would be no better off than he is now. "Ex nihilo nihil est."

The decree is affirmed, with costs.