EDWARD  F.  SWEENEY,  Appellant,  v.  HEAP
    O'BRIEN  MINING  COMPANY  and  GRAND
    HAVEN MINING COMPANY, Respondents.

Springfield Court of Appeals, June 26, 1916.

1. CORPORATIONS: Corporate Property: Trust Fund for Creditors.
   The property of a corporation is a trust fund for the benefit
   of creditors and cannot lawfully be diverted to any other purpose
   without providing for such creditors.

2. ———: Change of Corporate Name and Form: When Not Effec-
   tive.   Where an old corporation in effect changes its name and
   corporate form by selling to a new corporation which is composed
   of and dominated by stockholders of the selling corporation,
   such change of corporate form and name is disregarded by the
   courts so far as creditors are concerned and the sale is regarded
   as a sale by the stockholders of the selling corporation to them-
   selves.

3. ———: Corporate Property: Sale: Creditors' Rights. The con-
   tinuance of the first company as a corporation de jure after it
   had ceased to exist as a de facto corporation constitutes no bar-
   rier to a suit by creditors to enforce their claims against its prop-
   erty in the hands of its successors.

4. ———: ———: ———: ———: Liabilities.  The stockholders
   and officers of a selling corporation were the same as those of the
   purchasing corporation which bought the property and effects
   of the former.   Said property had been mortgaged to secure a
   valid debt to such purchasing stockholders.   Regardless of such
   mortgage and the amount thereof a creditor could recover from

the new corporation the entire value of the property of the old corporation in its hands, such mortgage debt not having been assumed by the new company.

Appeal from Jasper County Circuit Court.—*Hon. Allen McReynolds,* Special Judge.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

*George W. Earnshaw, E. T. Burr* and *George W. Farris* for appellants.

*Haywood Scott* for respondent, Grand Haven Mining Company.

STURGIS, J.—This suit is founded on a promissory note. The first defendant, which we will designate as the O'Brien or old company, an Arizona corporation, is the maker. There is no question as to the plaintiff's right to a judgment against it. It is insolvent, however, having spent its capital stock in a mining venture on a tract of land which it leased from plaintiff in Oklahoma. Later it purchased this land subject to plaintiff's first lease. After mining for a year or more this company found itself with nothing but a mining plant located on nonproductive land. This mining plant was mortgaged to certain of its largest stockholders for $7500, which all the evidence shows was more than the plant was reasonably worth in its then condition and location. This company also owed the plaintiff the note sued on for $2250 with interest and a few other small claims.

As constituting liability of the other defendant on this note, the petition alleges that under this condition of affairs a new corporation known as the Grand Haven Mining Company, the other defendant herein, was organized under the laws of Arizona for the purpose of taking over the assets of the O'Brien company and removing same to the State of Missouri for the use of the Grand Haven Mining Company; that the principal incorporators, officers and directors of the Grand Haven company were and are identical with the principal

incorporators, officers and directors of the O'Brien company; that the Grand Haven company was organized and the said property transferred thereto for the purpose of cheating and defrauding plaintiff out of the money due him on said promissory note sued on, by putting the assets of the said O'Brien company beyond the reach of said plaintiff; that the Grand Haven company had a contract for and afterwards procured a lease on certain mining lands located in Jasper County, Missouri; that the said O'Brien company did transfer its said mining plant to the Grand Haven company which last-named corporation removed the same to the lease in Jasper County, and said mining plant is now located thereon and is claimed by the Grand Haven company; that said transfer was without consideration and made for the purpose of defrauding this plaintiff; that the principal officers, directors and stockholders of the two corporations are identical; that the Grand Haven Mining Company had actual notice of this indebtedness existing against the O'Brien company in favor of plaintiff, had actual notice that this mining plant was the sole asset of the O'Brien company, and that the attempted transfer of said property would operate to defraud this plaintiff.

The evidence shows that when the O'Brien company was hopelessly insolvent some sixteen of the fifty-three stockholders of the O'Brien company organized the Grand Haven company for the purpose of mining on the tract of land in Jasper County, and for that purpose taking over the mining plant and machinery of the O'Brien company and moving it to and installing it on such Jasper County land. The other stockholders of the O'Brien company were offered stock in the new company, but declined same. The evidence also shows that while the mining plant had cost much more, yet as its further use necessarily involved its being dismantled, removed and re-erected on other land, it was then reasonably worth from $3000 to $5000. The new company did spend some $5000 or more in removing it to the new location and improving and equipping it for use there. After disposing of this mining plant the

O'Brien company still owned the tract of land in Oklahoma on which it had been mining, and which it purchased for $7000, but its real value at this time is not shown, further than that it was subsequently sold by another creditor for a small amount.

As before stated, the O'Brien company had mortgaged this plant to several of its stockholders for $7500 for borrowed money and the validity of this indebtedness is not questioned. In fact the O'Brien company had borrowed this money after spending its capital stock for the purpose of putting its Oklahoma mine on a paying basis. It had been paying plaintiff, as the owner of the first lease, ten per cent royalty on all ores mined, and it purchased and extinguished his lease for $5000, paying $2500 cash out of the money so borrowed and executing the note sued on for the other $2500. On this note it subsequently paid $250 more. The organization of the Grand Haven company was unquestionably brought about by reason of the insolvency of the O'Brien company with the hope on the part of the stockholders of the latter company to recoup their losses by engaging in a further mining venture and with a view of taking over the then idle mining plant of the O'Brien company. By consent of the stockholders who held the mortgage of $7500 on the mining plant and all of whom became stockholders in the new, or Grand Haven company, it was arranged and agreed between the old and the new companies that the mining plant be sold and transferred by the old to the new company in consideration of $4000 in stock of the new company issued to and to be held by a designated trustee. The terms of this trust, as we understand it, were that this stock, amounting to practically thirty-five per cent of the capital stock of the new company, was to be held by this trustee for the benefit of (1) the holders of the $7500 secured notes, (2) for the benefit of the plaintiff, and (3) in case of the payment of these indebtednesses then for the benefit of the stockholders of the old company generally. The plaintiff was not consulted and did not give his consent to this arrangement. It will be readily

seen that any benefit to the plaintiff from this source was highly contingent in that the $4000 in stock held by the trustee must prove to be worth, either in dividends or by sale, more than the $7500.

The effect of this transaction was to clothe the new, or Grand Haven, company with the ownership of this mining plant free from any encumbrance and to denude the old company of practically all its property, which had ceased to be a going concern, and with no provision for paying the plaintiff creditor except the possible contingency of the trust stock proving to have a value of more than two to one.

The good faith of all these transactions is not questioned. The stockholders forming the new corporation paid up the capital stock of $25,000 in full in money and money's worth, unless it be the $4000 of stock issued to the trustee in consideration of the mining plant and that was doubtless its fair value. The $7500 of secured indebtedness on the mining plant was bona fide and the stockholders who held this indebtedness not only took stock in the new corporation and paid for same in full, but gave full value for the stock issued to the trustee by relinquishing their security on the mining plant transferred to the new company. Looking at the matter, however, from the standpoint of the two corporations and considering them as aggregations of stockholders, the new corporation composed of the stockholders of the old acquired this property for no other consideration than the issuing of its own stock in favor of persons who were stockholders in both companies. The old company, as such, got nothing, though it is argued that, as its property was mortgaged for all it was then worth, it in fact parted with nothing. We have spoken of the new company as being composed of the stockholders of the old company, though in fact there were three new stockholders, but their holdings were small and the management of the new and of the old companies was entirely dominatd by those who held stock in both.

The question presented is whether this transfer of property from the old to the new company in this

manner is not constructively and as a matter of law, regardless of any intent of the stockholders, fraudulent as to the plaintiff as a creditor of. the old company. The well-established rule of law is that the property of a corporation is a trust fund primarily for the benefit of creditors and cannot lawfully be diverted to any other purpose without providing for such creditors. From this follows the rule that when one corporation takes over the property and business of another, it also takes its liabilities. Since the stockholders of the corporation are not allowed to directly or indirectly acquire a benefit from the property of the corporation or to in any way withdraw it from the reach of creditors until such creditors are paid .or provided for, the above principle is especially applicable to any such transfer of property to a new corporation composed of or dominated by stockholders of the selling company. Such change of corporate form and name is disregarded by the courts so far as creditors are concerned and the sale by one corporation to the other composed of or dominated by the same stockholders is regarded as a sale by themselves to themselves.

If we disregard, for the moment, the fact that the property conveyed to the new company was encumbered by mortgage in favor of certain stockholders and regard the property as clear of any such encumbrance, the right of the plaintiff to follow the property into the hands of the new company is clear. In a note to A. & B. Ry. Co. v. Jones (Ga.), 11 L. R. A. (N. S.), 1119, the general rule is stated thus: ''Where the corporation incurring the liability ceases to have an independent existence *de jure,* the consolidated or absorbing corporation is liable at law, as well as in equity; the ground for such liability being sometimes stated to be the continuance of the original corporation under a new guise, . . . and sometimes to be an assumption of liabilities arising by implication. . . . Where, however, there is an absorption of the business and assets—in other words, a merger. *de facto*—by either a corporation formed for the purpose, or one already

194 M. A.—10

in business, the liability of the corporation receiving the assets is rested upon the familiar trust fund doctrine, since such receiving corporation does not stand as a bona-fide purchaser for value. In such case the extent of the liability is necessarily determined by the value of the property received." This note further says, in speaking of the liability of a successor corporation for claims against its predecessor: "As the following cases show, the liability of a successor corporation for claims against its predecessor is based sometimes upon the ground that the new corporation is a re-incorporation of the old (cases cited) and sometimes upon the ground that the transfer of the assets from the old corporation to the new is to be regarded as fraudulent as to the creditors." In Altoona v. Richardson Gas & Oil Co., 81 Kans. 717, 106 Pac. 1025, 26 L. R. A. (N. S.), 651, the court held that where one corporation becomes practically extinct, transferring all its assets to another and receiving in return stock in the other corporation which succeeds to its business, the new corporation is liable, to the extent of the value of the property acquired, for the debts of the old one. See also as to the extent of the liability, Central Imp. Co. v. Cambria Steel Co., 210 Fed. 696.

In Berthold v. Holladay-Klotz Land & Lumber Co., 91 Mo. App. 233, it was held that where a new corporation was formed to take over the property and business of an old one, most of the assets of which were thereupon transferred to the new corporation, such assets stood charged in the hands of the new company with an equity in favor of the creditors of the old. The continuance of the first company as a corporation *de jure* after it had ceased to exist as a corporation *de facto* constitutes no barrier to a suit by creditors to enforce their claims against its property in the hands of its successor. In Santa Fe Electric Co. v. Hitchcock, 9 N. M. 156, 50 Pac. 332, it was held that where the stockholders and officers of an electric light company formed a new company to which the old corporation executed a lease of its poles and wires, thus leaving the old company in possession of the power house

and machinery but without business, the new company should be held liable for a deficiency arising upon foreclosure of a mortgage upon the property of the old company. In Vance v. McNabb Coal & Coke Co., 92 Tenn. 47, 20 S. W. 424, it was held that where the property of a corporation was transferred, in consideration of a certain amount of capital stock which was issued to the individuals owning stock in the selling company, to a corporation organized for the express purpose of acquiring such property, the creditors of the selling corporation might follow and subject the property in the hands of the new corporation to their claims the same as if no transfer had been made. The case of Jennings Neff & Co. v. Chrystal Ice Co. (Tenn.), 159 S. W. 1088, is a case similar in most respects to the present one and the court held: "There is abundant authority likewise for the proposition that where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation. [Thompson on Corporations, sec. 6547; 10 Cyc. 1267; Altoona v. Richardson Gas & Oil Co., 81 Kans. 717, 106 Pac. 1025, 26 L. R. A. (N. S.) 651; Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N. W. 413.] . . . It follows that when this purchasing corporation took over in exchange for its own stock and bonds the assets of the other, and permitted these securities which it had substituted for the visible, tangible property of the selling corporation to be distributed among the shareholders of the latter, without provision for the creditors of the latter, it thereby became a party, with full notice, to the diversion of a trust fund. As such the purchasing corporation holds the property so acquired impressed with the same trust with which said property was originally charged, and the purchasing corporation is liable to the creditors of the selling corporation to the extent of the value of the property thus

obtained. . . . Creditors of the old corporation can-
not be required to look alone to the stock and bonds
which were substituted for the real, tangible assets of
that corporation. The value of securities so substituted
is more or less problematical and creditors should not
be forced to surrender their claim against available,
visible assets, and transfer such claim to new securities.
Their remedy cannot thus be hindered and impaired
for the benefit of the stockholders." [See, also, on this
point Zachra v. Mfg. Co., 179 Mo. App. 683, 693, 162
S. W. 1077; Quinn v. American Bankers Assur. Co.,
183 Mo. App. 8, 165 S. W. 823; Central of Georgia Ry.
Co. v. Paul, 93 Fed. 878.]

The most important fact in plaintiff's favor is that,
according to the evidence, this mining plant was, at the
time of its transfer to the new company, mortgaged
for its full value to secure a valid indebtedness of the
old company. On this account it may justly be said
that plaintiff is in no wise prejudiced by the transfer
since the property was not available to plaintiff, re-
gardless of such transfer. We find no case in this State
where this phase of the case is considered. There are
several cases, where the trust fund theory is adhered
to, which hold that the purchasing corporation is liable
only to the extent of the value of the property lost
to the creditor. [See note to 11 L. R. A. (N. S.) 1120;
Sidell v. Ry., 78 Fed. 724.] Had this mining plant
been conveyed to the new company subject to the en-
cumbrance of this mortgage, a different situation would
be presented. The rule, however, seems to be that
it is the property or its value as it stands in the hands
of the purchasing company that fixes and becomes the
measure of its liability regardless of the status or
availability of such property to the creditor while in
the hands of the selling company. When there is such
identity between the selling and purchasing companies
the transfer is likened to a mortgagor purchasing at
his own sale or a landowner purchasing his land at
a tax sale. In such case the amount of the mortgage
or tax lien is of no importance. Such is clearly the
rule in the case of Northern Pacific Ry. Co. v. Boyd,

228 U. S. 482, 57 L. Ed. 931; id. 170 Fed. 779; id. 177 Fed. 804. In that case, property of a hopelessly insolvent corporation encumbered for over $150,000,000 was sold by a consent court decree, regarded by the court as a mere form, for about $61,000,000. There was no possibility of the property being sold on the market for enough to pay the encumbrances thereon. It was brought in by a new corporation formed for that purpose and composed of the holders of the secured indebtedness and of the old stockholders. The purchasing company was held liable for the unsecured debt of a non-participating creditor. In the Circuit Court of Appeals, 177 Fed. 804, 818, the court said: "In brief, by the reorganization the property of the old company was transferred to the new, and the stockholders of the old company became the stockholders of the new, having at all times retained an interest as stockholders. Under this state of facts, the appellee has the right to look to the new company for the payment of his judgment. In Railroad Co. v. Howard, 7 Wall. 392, it was held that a sale under foreclosure of mortgage of an insolvent railroad company, expedited and made advantageous by an arrangement between the mortgagees and the stockholders, whereby after payment to the mortgagees of a percentage of the debts due them, the stockholders of the company were to receive the residue of the proceeds, was fraudulent as against the general unsecured creditors, notwithstanding that the road was *mortgaged far above its value* and on a sale in the open market did not bring enough to pay the mortgage debts, so that in fact if there had been an ordinary foreclosure, without arrangement between the mortgagees and the stockholders, the whole proceeds of the sale would have belonged to the mortgagees. Said the court: 'Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a bona-fide purchaser, and the rule is well settled that stockholders are not entitled to any share

of the capital stock, nor to any dividend of the profits until all the debts of the corporation are paid.' '' Affirming the reorganized company's liability, the United States Supreme Court, 57 L. Ed. 943, said: ''As between the parties and the public generally, the sale was valid. As against creditors, it was a mere form. Though the Northern Pacific Railroad was divested of the legal title, the old stockholders were still owners of the same railroad, encumbered with the same debts. The circumlocution did not better their title against Boyd as a non-assenting creditor. They had changed the name but not the relation. The property in the hands of the former owners, under a new charter, was as much subject to any existing liability as that of a defendant who buys his own property at a tax sale. The invalidity of the sale flowed from the *character* of the reorganization *agreement* regardless of the *value of the property*, for in cases like this, the question must be decided according to a fixed principle, not leaving the rights of the creditors to depend upon the balancing of evidence as to whether, on the day of sale, the property was insufficient to pay prior encumbrances.'' It will be noted that the purchasing company in the above case was composed of the stockholders and bondholders. The bondholders had a right to purchase the property to protect themselves, but because old stockholders were included in the new company the transfer was held to be a mere form. That such is the meaning of the majority opinion in that case is shown by the dissenting opinion protesting against the rule which allows a creditor ''to have the property of the old company subjected to his nonlien claim, not because of any actual fraud in the sale, nor because he can show that he has in any way suffered a loss by reason of the plan or reorganization under which the sale was conducted, but solely and simply because the shareholders of the debtor company are said to have participated in some way in the benefits of the sale.''

It is also urged that plaintiff is guilty of laches barring his claim in that he waited some three years after the transfer before bringing this suit. The case

was not decided on that theory in the lower court and we find no fact warranting the application of this doctrine. What is said in Railroad v. Boyd, supra, fully disposes of this contention.

The result is that the judgment will stand as to the O'Brien company, but as to the Grand Haven company it will be reversed, and the cause remanded for further proceedings and in order that one judgment may be entered disposing of this entire case not inconsistent with this opinion.

*Robertson, P. J.,* and *Farrington, J.,* concur.