26 F.Supp. 170 (1939)
ABEKEN
v.
UNITED STATES.
No. 12143.
District Court, E. D. Missouri, E. D.
January 26, 1939.
Oliver Blackinton, of St. Louis, Mo., for plaintiff.
Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Marshall Craig, Asst. U. S. Atty., of Charleston, Mo., for defendant.
DAVIS, District Judge.
This is a suit wherein plaintiff, Trustee in Bankruptcy of a partnership composed of Edward J. Butler and Charles F. Walsh, seeks to recover from defendant, United States of America, for alleged over payment of amusement taxes, the sum of $1,437.27 with interest at the rate of six per cent per annum from December 16, 1934.
Plaintiff is a resident of the City of St. Louis, Missouri, and this court has jurisdiction to hear and determine this suit.
In 1933, a Missouri corporation, bearing the name "St. Louis Gunners Athletic Association, Inc." (of which Edward J. Butler was the principal stockholder), and at times using various trade names in which the word "Gunners" appeared, was sponsoring professional football games and collecting admission charges to the games, whereby amusement taxes in substantial sums became due to the United States.
The name "Gunners", as applied to a professional football team in St. Louis, had *171 been widely advertised and exploited during 1933 and 1934, and had acquired a good will that was valuable in that business.
On December 16, 1934, the "St. Louis Gunners Athletic Association, Inc." owed the United States a balance of $824 as amusement taxes arising out of the receipts collected at football games played during the year of 1933. Demand was made for the payment of these taxes by the Collector of Internal Revenue upon the officers and employees of the corporation during the years of 1933 and 1934. In July, 1934, a warrant of distraint against the corporation was issued, but efforts to collect the balance due were not successful.
On or about November 6, 1934, Edward J. Butler, who was the principal stockholder in, and owner and manager of the "St. Louis Gunners Athletic Association, Inc.", and Charles F. Walsh, who was Coach of the "Gunners", entered into a contract to purchase and acquire in their own names, a franchise in the National Professional Football League, in consideration of which the said parties made payments of $8,500 on the purchase price of the said franchise. Thereupon, the said parties took possession of all the property of the corporation, consisting of the paraphernalia of the football team, the players' contracts, and the good will of the "Gunners"; entered into new playing contracts with the members of the team; and continued to sponsor football games in St. Louis and elsewhere in accordance with the regulations of the National League under the name of "Gunners".
Such a football game was played in St. Louis on December 16, 1934. Deputy Internal Revenue Collectors appeared at the game, and seized the sum of $1,917.96, which was made up of the following items, the correctness of none of which is in dispute:

Amusement taxes due for the
 game played on December 16,
 1934 ........................... $ 479.69
Amusement taxes due for the
 game played on December 2,
 1934 ........................... 614.27
Amusement taxes assessed against
 the "St. Louis Gunners Athletic
 Association, Inc." for games
 played during the year 1933 .... 824.00
 ________
 Total ....................... $1917.96

Thereafter, on January 12, 1935, an involuntary petition in Bankruptcy was filed against Edward J. Butler and Charles F. Walsh, individually and as co-partners, and on March 20, 1935, an order of adjudication was entered.
The plaintiff, Trustee in Bankruptcy, on July 18, 1935, filed claim for refund of the sum of $1,438.27, which in due course was "rejected in full", no claim for refund of the amount of tax collected for game of December 16, 1934, that is, $479.66, was made, and that item is not in dispute.
On April 9, 1937, this suit was filed.

Opinion.
The bankrupts, without the payment of any consideration, took over all the property of the "St. Louis Gunners Athletic Association, Inc." By taking all the assets of the corporation without notice to creditors, the partnership likewise assumed the debts of the corporation.
One who appropriates the assets of a corporation to his individual use is personally liable for corporate debts to the extent of such assets. Fulton Auto Supply Co. v. Sullivan, 148 Ga. 347, 96 S.E. 875. And when a corporation is dissolved its assets are to be considered as a trust fund for the payment of its debts. Bacon v. Robertson, 18 How. 480, 15 L.Ed. 499. Moreover, the same principle is applied in cases where one corporation takes over the property and business of another, and continues the same business, it being held in these cases that the new corporation assumes the debts of the old. West Texas Refining & D. Company v. Commissioner of Internal Revenue, 10 Cir., 68 F.2d 77; Central Improvement Company v. Cambria Steel Company, 8 Cir., 210 F. 696; Sweeney v. Mining Company, 194 Mo.App. 140, 186 S.W. 739; Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655.
In Blackinton v. United States, 8 Cir., 6 F.2d 147, the trustee of a bankrupt corporation, which had acquired the assets of the Interstate Tailoring Company, a corporation, petitioned to revise the order of the Referee in Bankruptcy allowing claims for income taxes on the Interstate Company to be paid out of assets of the bankrupt. Judge Stone, speaking for the Circuit Court of Appeals, said [page 148]: "The trustee contends that this is an instance of the purchase in good faith, for a valuable consideration, by one corporation of the assets of *172 another. Obviously, it is nothing of the sort. It is the taking over of all assets and leaving nothing in their place. Clearly, this cannot be done in any way that will leave the creditors of that company without remedy. Such an absorption of assets carries with it necessarily a liability for the debts which those assets might have paid."
There is no evidence that the value of the property of the corporation which was taken over by the partnership was less than the amount of the outstanding obligations. It is a just inference that the contrary was the fact, because the players' contracts and the name "Gunners" were assets of substantial value. The burden of proof upon this point was, of course, with the plaintiff.
The point made by plaintiff that wage claims are entitled to priority in bankruptcy over the Government's tax claims is of no particular significance. In the case cited, Borland v. United States, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974, the question was the order in which claims should be paid. That question is not in this case. Here, the tax has been paid, and the question is whether the amount may be recovered by the Trustee in Bankruptcy.
The Collector of Internal Revenue was paid taxes that were properly assessed and justly due. There is no dispute on this point. The plaintiff contends, however, that he is entitled to recover on the theory of a voidable preference. The elements of a voidable preference, as created by the Bankruptcy Act, § 60, 11 U.S.C.A. § 96, are: (1) The insolvency of the bankrupt at the time the preference is given. (2) The giving of the preference within four months of bankruptcy. (3) The receiving by the creditor of a larger percentage of his debt than other creditors of the same class. (4) The diminution of the estate of the bankrupt by the alleged preference. (5) The necessity that the person receiving the preference shall have reasonable cause to believe, at the time, that the payment would effect a preference. 8 C.J.S., Bankruptcy, § 213, p. 697.
In view of the circumstances and the parties, there is grave doubt as to whether the payment in question constituted a preference. No adjudication to that effect has been found. But if it were a preference, plaintiff could not recover taxes on that theory for these reasons: (1) Aside from the Bankruptcy Act, a creditor may be preferred by a debtor. (2) The United States is not a "person" within the meaning of the statute permitting the recovery of a preference. The Bankruptcy Act expressly mentions the United States when the Government is to be bound by its provisions. (3) The United States has not consented to be sued for the recovery of a preference.
Let judgment, accordingly, be entered.