## COLONIAL ICE CREAM CO. et al. v. SOUTH-LAND ICE UTILITIES CORPORATION.

### No. 5187.

Court of Appeals of the District of Columbia.

Argued Oct. 12, 1931.

Decided Nov. 9, 1931.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and Selig C. Brez, all of Washington, D. C., for appellants.

John Paul Jones and Hugh C. Bickford, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Merchants' Cold Storage & Ice Manufacturing Company was at the time of the occurrences out of which this suit arose engaged in operating a cold storage plant and in manufacturing ice in Richmond, Va. During the

progress of the cause below it changed its name to Southland Ice Utilities Corporation. We shall hereafter speak of it as Merchants' Company. Zero Products, Inc., which we shall hereafter speak of as Zero Company, was a Delaware corporation, with an ice cream manufacturing plant located in Washington city, and with an office in Richmond, Va. In December, 1926, it sold out its entire plant and equipment to Zero Ice Cream Company, also a Delaware corporation, which latter company subsequently changed its name to Colonial Ice Cream Company, and which we shall hereafter speak of as Colonial Company.

In the early part of 1925, Zero Company was engaged in selling its ice cream for distribution in Richmond through Old Dutch Market, and entered into an agreement with Merchants' Company for the storage of its cream in cans in a special room or space in the cold storage plant of the latter. The price of the storage was 12 cents per can per month. This relationship of the parties continued until somewhere around March 1, 1926, at which time Zero Company complained that the temperature at the place of storage for the ice cream was not sufficiently low to preserve the same satisfactorily. Merchants' Company agreed to correct this condition by enlarging the insulation in the space occupied so that the temperature would be maintained around 5 degrees Fahrenheit, but insisted that, if it went to this expense, there should be an agreement on the part of Zero Company to use the space for a definite period. Zero Company consented to these conditions, and on March 1, 1926, wrote Merchants' Company as follows: "I have for acknowledgment your letter of February 27th and beg to advise that we will agree to use the space now occupied by us for at least twelve months from May 1st, 1926"—and, in accordance with this, did occupy and use an improved insulated room in Merchants' plant from that date to about the middle of September, 1926. Somewhere around the latter date, Old Dutch Market went into receivers' hands, and the receiver declined to continue the purchase of ice cream from Zero Company, and that company ceased the sale and distribution of ice cream in Richmond, and discontinued the use of the room in Merchants' plant, and, as we have already seen, in the ensuing December sold out its entire plant to Zero Ice Cream Company, the predecessor of Colonial Company.

In November, 1927, Merchants' Company brought suit in the Supreme Court of the District, on the equity side, against Colonial Company, the purpose of which, as we understand it, was to obtain discovery of facts in relation to the status of the defendant and its predecessor companies. These facts were disclosed in answers to interrogatories filed, and showed that in December, 1926, Zero Company, in consideration of the assumption of its liabilities as shown by its books of account to an amount not exceeding approximately $136,000, and certain other liabilities on conditional sales contracts for soda fountains, cabinets, etc., and the delivery to it of 1,785 shares of second preferred capital stock of Zero Ice Cream Company (predecessor of Colonial Company), had sold and delivered to Zero Ice Cream Company all of its assets and property, stock in trade, fixtures, machinery, patents, franchises, good will, etc. Merchants' Company thereupon filed an amended bill of complaint in which it made Zero Company an additional party defendant, and in which, after setting out the terms of the contract for lease of space in its warehouse, the breach thereof and damage sustained, and the sale of the assets of the Zero Company to Colonial Company as the successor of Zero Ice Cream Company, alleged that the transfer of the assets of the one company to the other was fraudulent and designed and intended to leave Zero Company with assets of no value for the purpose of defeating the claims of its creditors; that the two companies were to all intents and purposes the same company with substantially the same stockholders and officers; and that the consolidation of their assets was in effect a merger and the alleged sale a mere subterfuge. Zero Company appeared and moved to dismiss on the ground that the alleged cause of action made in the bill of complaint was not cognizable in equity for the reason plaintiff had not exhausted its remedies at law. This motion was overruled, and we think correctly (see Central Improvement Co. v. Steel Co. (C. C. A.) 210 F. 696, 701), and the case was thereupon submitted and heard on evidence adduced by the parties respectively, and the lower court, after due consideration, entered a decree in favor of Merchants' Company for $1,588.04, and directed that the shares of preferred stock of Colonial Company belonging to Zero Company, which the latter had acquired through the sale of its assets to Colonial Company, and which had, by an order of the court entered during the progress of the cause, been delivered to a receiver appointed by the court, should be sold and the decree paid out of the proceeds thereof, and further directed, if such proceeds were insuf-

ficient, that Merchants' Company should have execution against Colonial Company for the deficiency. To this decree appellant assign error in the refusal of the court to dismiss the bill, in holding that there was a contract between Merchants' Company and Zero Company, and that the same had been breached, in holding that Colonial Company, as the successor of Zero Ice Cream Company, was under any liability in relation thereto, and finally in the method adopted in arriving at the damages, and especially in adding thereto anything on account of loss of profits on the sale of ice.

We think an examination of the record will sustain the conclusion of the trial court that the sale of the assets of the Zero Company to the Zero Ice Cream Company was in its essence nothing else than a continuation of the business of the former company under a new name, and we do not think the retention by the Zero Company of its charter as a corporation of itself tended to make it any the less extinct as an active entity, and, in these circumstances, we think its assets may be followed in the hands of the new company, and that these constitute a trust fund for the payment of the creditors of Zero Company. Okmulgee Window Glass Co. v. Frink (C. C. A.) 260 F. 159.

The question therefore which we have to determine is whether the evidence sustains the conclusion reached by the court as to the contract and its breach, and whether the proper measure of damages was applied.

The point principally urged below and stressed in the argument before us was that the contract sued on did not comply with the Virginia statute of frauds. Section 5561 of the Virginia Code provides that no action shall be maintained on any agreement that is not to be performed within a year, unless the agreement, or some memorandum thereof, be in writing signed by the party to be charged, or his agent. The contract sued on, as we have already seen, consisted of a letter from Zero Company to Merchants' Company of date March 1, 1926, as follows: "I have for acknowledgment your letter of February 27th and beg to advise that we will agree to use the space now occupied by us for at least twelve months from May 1st, 1926." Admittedly the letter does not name the consideration to be paid for the premises leased, but under the express provisions of the Virginia statute this need not be included in the writing. But it is insisted that, in addition to this, the letter does not show, except by resort to extrinsic evidence, what space was referred to, but we think there is nothing in this point. The letter refers to the space "now occupied by us," and, as to this, there can be no doubt of the meeting of minds of the parties concerned, or as to the understanding what space was intended. While it is quite true that the statute, as construed by the Virginia and West Virginia courts, requires the contract to be certain in itself, or capable of being made so, it nevertheless is permissible for the court to go outside the writing for the purpose of identifying and ascertaining the particular land referred to, in cases of sale or lease. White v. Core, 20 W. Va. 272. See, also, Matthews v. La Prade, 130 Va. 408, 420, 107 S. E. 795, 799, in which the Court of Appeals of Virginia said: " 'There is no mystery about the statute of frauds,' and the subject-matter of the contract may, as between the parties thereto, be identified by parol as well where it is land as where it is personal property. The general rule in the interpretation of written instruments is that it is permissible for the expositor to place himself as nearly as possible in the position of the maker of such instrument, and to this end parol evidence is admissible to show the facts and circumstances surrounding such maker at the time the instrument was executed."

Nor are we any more impressed with the argument that the contract sued on was not the contract with Zero. The basis of this claim is that Whitfield, who signed the contract, was president of Zero Products and of Dutch Market, but the evidence we think unmistakably shows that the original lessor of the space in the warehouse was Zero Company. The evidence of the manager of Merchants' Company in this behalf which the lower court accepted, if believed, is convincing, and this is confirmed by the letter of that company of May 30, 1925, to Merchants' Company, in which it says: "I am going to ask you to extend me the courtesy of having one desk and a telephone from which to handle the Zero business on your platform, as the present indications are that the operations are going to be larger that I at first thought, and it will greatly facilitate the conducting of business if we can handle the whole thing right from there." The letter of March 1 agreeing to use the space for a year was written on the stationery of Zero Company and signed by Whitfield as president, and the language, "we will agree to use the space now occupied by us," necessarily was written in that company's behalf, and we think any other conclusion would do violence to the plain import of the language used in

circumstances in which it was used, and, if this be true, the signature of Whitfield as agent was sufficient to bind that company. See Radford Co. v. Dunlap, 128 Va. 658, 105 S. E. 257; Donahue v. Rafferty, 82 W. Va. 536, 96 S. E. 935.

It being thus decided that the contract was the contract of Zero Company, and its partial breach being admitted, nothing remains but to determine whether the method adopted by the lower court to ascertain the damages was correct.

The contract, as we have seen, obligated Zero Company to take and pay for the warehouse space from May 1, 1926, for one year at the price of 12 cents per gallon can of ice cream stored therein. In accordance with its agreement, it continued to occupy the space from May until September, after which time it abandoned it, and, notwithstanding every effort on the part of the Merchants' Company, the latter was unable to lease it for the balance of the year. The measure of its damages, therefore, is an amount which will compensate it for the loss which a fulfillment of the contract would have prevented, or which the breach of it has entailed. United States v. Behan, 110 U. S. 338, 344, 4 S. Ct. 81, 28 L. Ed. 168. In the present case, inasmuch as the contract did not provide a monthly rental, resort may be had to some method of calculation which may reasonably be said to approximate certainty, and which, when thus applied, will likely result in a definite ascertainment of the amount that the parties had in contemplation when the contract was made. The premises had been occupied, as we have already seen, during the previous year, and the court, in fixing the damages, calculated the amount of rental for the defaulted months on the basis of the amount paid in those same months of the preceding year. This, we think, under the circumstances, was fair, and the decree for $721.80, we think, should be sustained. But the lower court went farther and awarded damages in the sum of $866.24 for the refusal of Zero Company to purchase ice. We think this claim is not allowable. We have examined the record with great care, and can find nothing which would justify sustaining the position of the Merchants' Company that Zero Company at any time entered into a definite, binding contract for the purchase of ice. There was certainly no writing to that effect, and therefore no contract which could be sustained by extrinsic and explanatory evidence. If it be conceded that there was a verbal contract, it was clearly within the prohibition of the statute of frauds, and therefore not enforceable.

In these circumstances, the decree of the court below will be modified in the respects mentioned, and, as modified, affirmed, with a division of costs between appellants and appellee.

Modified and affirmed.