## OHMER v. ALLEN et al.
### No. 6765.

Circuit Court of Appeals, Sixth Circuit.
Nov. 12, 1935.

H. W. Baker and Guy Wells, both of Dayton, Ohio (H. W. Baker and E. H. & W. B. Turner, all of Dayton, Ohio, on the brief), for appellant.

Craighead, Cowden, Smith & Schnacke, of Dayton, Ohio, for appellees.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Action by appellees on a contract to buy certain shares of stock. The jury returned a verdict for appellees and from the judgment rendered thereon this appeal is taken.

The case arises out of the following facts:

John F. Ohmer, appellant, was president of the Ohmer Fare Register Company. A reorganization of the company was con-

templated, and Freeman C. Allen, one of the appellees, acting for himself and Ohmer, at Ohmer's request on July 16, 1928, secured a thirty-day option on 1212 shares of the common stock of the company, consisting of 1012 shares from the W. B. Farnham estate, 100 shares from the widow of W. B. Farnham, and 100 shares from the trustee for the two children of W. B. Farnham. This option was later renewed for thirty days, and included an additional 50 shares owned by H. P. Farnham, brother of W. B. Farnham. The representative of those granting the option insisted that the block be sold in its entirety or not at all. Ohmer was to have 212 shares for distribution to his employees, and Ohmer and Allen were each to have 500 shares. Ohmer later notified Allen that he would take 13 shares of the H. P. Farnham stock for his employees. Allen could not finance the purchase of his quota, and negotiated with the Central Trust Company of Rochester, New York, appellee, for a loan. As the stock was to be deposited as security and was closely held, Allen requested Ohmer to write to the Central Trust Company, assuring the bank of a ready market for the stock. Ohmer mailed such a letter, which was not acceptable. On September 14, 1928, Allen wrote Ohmer enclosing a letter which the bank wished Ohmer to sign (Plaintiff's Exhibit No. 3).[1]

On the morning of September 17, 1928, Ohmer and Allen had a telephone conversation in which Ohmer was promised an option upon additional shares. Ohmer signed Plaintiff's Exhibit No. 3 and enclosed it with a letter which Allen was to sign, giving Ohmer the desired option.

On September 18, 1928, Allen mailed Ohmer Plaintiff's Exhibit No. 4,[2] which differed from Plaintiff's Exhibit No. 3 in obligating Ohmer to take "all or any" shares offered after the time limit therein, instead of the entire 500 shares. In the enclosing letter Allen informed Ohmer that one Foster had offered to take up whatever stock Allen would let him buy; that Allen had made arrangements for the loan and would close with the representative of the Farnham family on receipt of a wire from Ohmer that Plaintiff's Exhibit No. 4 was satisfactory. Allen testified that Ohmer instructed him not to use Exhibit No. 3 unless Allen signed the option. Ohmer denied this, but Exhibit No. 4 recites that Exhibit No. 3 is the consideration for the option.

On September 19, 1928, Ohmer wired (Plaintiff's Exhibit No. 5)[3] that Plaintiff's

[1] Plaintiff's Exhibit No. 3.

"Central Trust Company,

"Rochester, N. Y. "September 14, 1928.

"Mr. Freeman C. Allen, Rochester, N. Y.

"Dear Mr. Allen: In consideration of your allowing me to take up 500 shares of Ohmer Fare Register common stock held under option by you, I hereby agree to purchase 500 shares of Ohmer Fare Register common stock which you are now purchasing from the W. B. Farnham estate from you or the holders if called upon by the holders at $200 per share after two years from date on three months' notice.

"Yours very truly,

"(Sgd) John F. Ohmer."

[2] Plaintiff's Exhibit No. 4.

"September 18, 1928.

"Mr. John F. Ohmer, Ohmer Fare Register Company, Dayton, Ohio.

"Dear Mr. Ohmer: Whereas I have purchased from the W. B. Farnham estate of Rochester, New York, five hundred (500) shares of the Ohmer Fare Register common stock, and whereas you have directed a letter dated September 14, 1928, to me regarding this stock, copy of which is hereto attached, now therefore, in consideration of this letter by you to me, I will and do hereby agree to give you an option for two (2) years from date

on three months' notice, to purchase from me one hundred and fourteen (114) shares or lesser number of shares as you may elect, of the Ohmer Fare Register common stock at $200 per share, plus an amount in cash equal to 6% interest on the purchase price less the amount equal to the cash dividend on the said stock from this date to the exercising of this option.

"It is also understood that your agreement, as outlined in your letter to me of September 14, is to purchase at my option or that of the holders all or any of the five hundred (500) shares of the Ohmer Fare Register common stock which I am purchasing from the W. B. Farnham estate at $200 per share.

"Yours very truly,

"(Sgd.) Freeman C. Allen.

"FCA:CME"

[3] Plaintiff's Exhibit No. 5.

"Western Union

"Received at Main Office, 15 and 15 Reynolds Arcade, Rochester, N. Y.

"1928 Sep 19    P M 6:10

"NA866   5-AR Dayton Ohio   19   556 P

"Freeman C. Allen

"Eastman Kodak Co   Rochester N.Y.

"Your letter of eighteenth satisfactory.

"John F. Ohmer."

944

Exhibit No. 4 was satisfactory. After receiving Ohmer's telegram, Allen closed the loan with the bank, delivered 500 shares to Ohmer, 225 to Ohmer for his employees, sold 287 shares to Field-Glore & Company, and put up 250 shares with the bank as collateral. The two-year period expired on September 14, 1930. At the time of the general decline in the stock market Allen wrote several times to Ohmer asking him to fulfill his contract to purchase the shares held by the bank, which Ohmer refused to do. Allen later wrote, stating that he would have the stock sent with draft attached to Ohmer's bank in Dayton, and Ohmer replied on January 7, 1931, that the draft if sent on would not be honored. The draft was sent and was dishonored. On May 4, 1931, a formal demand was made by appellees upon Ohmer to purchase at the agreed price 2130 shares of the common stock of the Ohmer Fare Register Company, which by virtue of a ten for one exchange was the equivalent of 213 shares of the old stock.

Three questions of substance are presented:

(1) Whether the contract was embodied in Exhibit No. 3, or in Exhibits 3, 4 and 5. This question becomes material, for if Exhibit 3 controls, Ohmer was not obligated to accept the tender of any lesser number of shares than 500. If Exhibits 3, 4 and 5 constitute the contract, so far as number is concerned, the tender of 213 shares or their equivalent was valid.

(2) Whether the contract required the tender of shares of stock formerly belonging to the "W. B. Farnham estate"; and

(3) Whether notice to purchase the stock was given in conformity to the contract and within a reasonable time.

The trial court left the first question to the jury. We think the question was one of law. The execution of all of these exhibits was admitted, and they speak for themselves. We are of the further opinion that Exhibits 3, 4 and 5 constitute the contract. The jury found that they did constitute the contract, and hence Ohmer was not prejudiced. Also Ohmer did not except to that part of the charge submitting this question to the jury, nor request any charge touching the point, and even if the submission of this question was improper, he is not in position to complain.

The second question arises out of Ohmer's contention that the contract required the delivery of stock belonging to the estate of W. B. Farnham. Ohmer claims that the court should have directed a verdict in his favor upon this point if the stock tendered was not derived from the W. B. Farnham estate. The court left the meaning of the phrase to the jury and charged the jury that it could not return a verdict in favor of the appellees unless the stock that was tendered to Ohmer was stock coming from the Farnham family as a block. No exception was taken to this charge.

We think that the court rightly submitted to the jury the question whether the contract covered only stock formerly belonging to W. B. Farnham, deceased, or stock belonging to the Farnham family. The contract was ambiguous to the extent that the meaning of the phrase "W. B. Farnham estate" was not clear, and hence that question was for the jury under correct instruction. It is proper to consider the circumstances and situation of the parties in construing a contract. Merriam v. United States, 107 U. S. 437, 2 S. Ct. 536, 27 L. Ed. 531; Hurin v. Electric Vacuum Cleaner Co., 298 F. 76 (C. C. A. 6); Baker v. W. J. Kennedy Dairy Co., 77 F.(2d) 574 (C. C. A. 6). Taking into consideration the negotiations between Ohmer and Allen, there was substantial evidence to support the finding of the jury that the parties intended by the phrase "W. B. Farnham estate" to include all the stock of the Farnham family. The project was instituted by Allen's securing an option upon a block of 1212 shares. Only 1012 of these shares belonged to the W. B. Farnham estate, and in fact no stock was registered upon the books of the company as belonging to the Farnham estate. 200 shares belonged to members of W. B. Farnham's family. When the second option was secured, covering 50 additional shares belonging to H. P. Farnham, W. B. Farnham's brother, Ohmer at first notified Allen that he did not wish to have any of this stock, but in fact he took 13 of those shares.

Ohmer and Allen spoke loosely in their letters and on the witness stand of the block of shares. Ohmer testified that the option was to be for 1212 shares, that is for 200 more shares than those owned by the Farnham estate. He conceded that he referred to the option as covering all of the Farnham holdings.

The agreement was drawn up by the parties themselves, and not by lawyers.

Both Ohmer and Allen called the stock "the Farnham stock."

 Appellees contend that the fungible character of stock necessitated a conclusion that this contract related to any Ohmer Fare Register stock of value equivalent to that covered by the contract. While stock certificates are usually interchangeable and the substitution of one for another is ordinarily without legal significance [Richardson, Trustee, v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Sexton v. American Trust Co., 45 F.(2d) 372, 76 A. L. R. 781 (C. C. A.)] it is doubtless competent for parties to contract for the sale and delivery of certain specified stock certificates. Ohmer claimed at the trial that he had a sentimental reason for acquiring stock belonging to the estate of his old friend and associate, W. B. Farnham, but this explanation may be an afterthought. When called upon to take up this stock, Ohmer simply denied the obligation upon the ground that he and Allen had agreed to a fifty-fifty proposition in which each was to take up and pay for one-half of the stock. Giving to Ohmer's statement due consideration substantial evidence exists, as found by the jury, that the term meant stock of the Farnham family.

 Upon the question whether tender was made within the time limited by the contract, Ohmer urges that the contract provided for a two-year limitation within which demand must be made, construing the phrase "after two years from date on three months' notice" as meaning "within two years from date." This contention is untenable. If the holders called upon Ohmer subsequently to September 14, 1930, giving three months' notice and within a reasonable time, they complied with the contract. Several months elapsed after September 14, 1930, before the three months' notice was given and before the formal demand was made upon May 4, 1931. The court left it to the jury to determine whether demand was made within a reasonable time. In addition to taking no exception to the charge, Ohmer submitted to the jury a special interrogatory asking whether the notice to purchase was given within a reasonable time. The jury answered "Yes," and there was substantial evidence to support its finding.

The assignments of error touching rulings of the court on motion for new trial presented by this record are not such as to permit our review of the court's action. Pittsburgh, C. & St. L. R. Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; Fairmount Glass Works v. Cub Fork Coal Co., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. 439; Hunt v. Standard Brands, Inc., 72 F.(2d) 822 (C. C. A. 6). The assignments of error arising out of the claimed refusal of the court to charge upon certain subjects present no difficulty, as there were no requests to charge nor exceptions to the charge as given. As to Ohmer's claim with reference to misjoinder of parties, since the stock was pledged to the Central Trust Company, and since Allen, the pledgor, at the time of suit still had an interest therein, both Allen and the bank were proper parties to the suit.

The judgment is affirmed.