## DIAMOND POWER SPECIALTY CORPORATION v. BAYER CO.
### No. 7355.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1936.

SIMONS, Circuit Judge, dissenting.

George F. Scull, of New York City (Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich., Charles B. Belknap, of Toledo, Ohio, and Arthur C. Beaumont, of Detroit, Mich., on the brief), for appellant.

Paul Voorhies, of Detroit, Mich., and Harry A. Beimes, of St. Louis, Mo. (Goodenough, Voorhies, Long & Ryan, of Detroit, Mich., on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and FORD, District Judge.

ALLEN, Circuit Judge.

Appeal from a decree enjoining appellant from selling soot blower equipment at lower prices than those set forth in a certain Schedule "A" incorporated by reference into a license contract upon which the action was grounded. A cross-bill was filed by appellant, praying for accounting and for an injunction against violations of the same contract by appellee. Execution was awarded against appellee for unpaid royalties, and appellee was enjoined as prayed for, but no appeal has been taken from this portion of the decree.

The history preliminary to this litigation is not in controversy. The parties had been competitors in the manufacture of soot blower apparatus for a number of years. A soot blower is a device by which jets

of steam are blown into boiler tubes, removing the soot which is collected thereon. Appellant claimed that appellee was infringing certain of its patents, and instituted an ..c-tion in which it was held that appellee had infringed the Bowers patent, No. 1,465,387, the Garland patent, No. 1,416,553, and another patent not material here. Diamond Power Specialty Corporation v. Bayer Co., 13 F.(2d) 337 (C.C.A. 8).

Appellant then entered into the license contract which is the subject of this action. The Garland patent covers the automatic valve in head soot blower, and was not included among the five licensed patents.

The contract recites that the licensor is the owner of five patents, namely, S. J. Herman, No. 1,281,005; Kemnal & Henry, No. 1,377,622; Rawson, No. 1,523,288; Bowers, No. 1,594,594, and Snow & Cox, No. 1,608,-866; that licensee desires to make and sell soot blower apparatus embodying one or more of such inventions, and grants a nonexclusive license covering such five patents. The other provisions of the contract are not important here, with the exception of paragraph 6, which is particularly pointed out by the District Court as being ambiguous. The paragraph reads as follows in its pertinent portions:

"The license hereby granted is upon the express condition that the prices, terms and conditions of sale for soot blowers and/or soot blower parts embodying said inventions or any of them shall be those fixed from time to time and followed by the Licensor in making its sales of such apparatus, except that Licensee may sell at higher prices but not at less than ten (10) per cent. below Licensor's prices; and the Licensee, as part of the consideration for the license hereby granted, agrees to maintain such prices, terms and conditions of sale. Licensor's current prices, terms and conditions are set forth in Schedule 'A' attached hereto and made a part hereof, and may, from time to time, be revised by the Licensor upon reasonable and adequate notice to Licensee. The Licensor agrees that it will not sell at lower prices or on terms or conditions more favorable to the customer than those stipulated in the then current Schedule 'A'. It is understood that such prices, terms, and conditions shall be so determined as to afford a reasonable profit on the manufacture of these soot blowers."

Appellant contends that the license contract bound it to apply the prices of Schedule "A" to soot blower equipment embodying any or all of the five patents belonging to appellant, and to such equipment only. If this construction is correct, appellant has not violated the contract, and the District Court erred in that part of its decree which is based upon such charged violation.

Appellee urged at the trial that Schedule "A" prices apply to automatic valve in head soot blowers of every kind, independent of patents covered by the license contract. Sales of automatic valve in head soot blowers were made by appellant at less than Schedule "A" prices, but these were not sales of equipment embodying the five patents, nor any one of them. Appellant therefore contends that upon the uncontradicted testimony, if the license contract is properly construed, it has not breached its obligation.

The District Court considered the license contract to be ambiguous, interpreted it in the light of the situation of the parties, held that Schedule "A" prices were to apply on all soot blower equipment manufactured by appellant in competition with appellee, found that appellant had violated the contract so construed, and perpetually enjoined appellant from selling valve in head soot blowers and valve in head soot blower equipment or wrought chromium alloy soot blower tubes at prices lower than those in Schedule "A."[1]

Schedule "A" prices were charged upon all equipment sold by appellant embodying any of the five patents. Where the practical controversy arises is that at the date of the agreement, and for several years thereafter, appellant's soot blower which embodied the Garland automatic valve in head device also embodied one or more of the five licensed

[1] The court held that the contract provides that the prices, terms, and conditions of sale for soot blowers or soot blower parts sold under such agreement by the appellee shall be fixed from time to time by appellant, and shall be determined by the prices charged by appellant "for its own valve in head soot blower equipment (that is, defendant's [appellant's] price on the head defendant [appellant] makes, the things defendant [appellant] makes that go into competition in the business world with the things defendant [appellant] has licensed plaintiff [appellee] to make), including wrought chromium alloy soot blower tubes. * * *"

patents. Hence originally the prices of Schedule "A" were applied to the prices at which appellant sold its automatic valve in head soot blower, because at that time the Garland device was combined with one or more of the licensed inventions. Appellant, however, in developing its business, could and did manufacture automatic valve in head equipment not embodying any of the five patents. Upon this equipment it charged less than Schedule "A" prices, and undersold appellee in important contracts.

Both parties agree that the decisive question in the case is whether the contract is ambiguous. Upon this point we are compelled to agree with appellant. Paragraph 6 read by itself is clear. Taken in conjunction with the introductory part of the contract, it shows plainly that the parties are making a license agreement with reference to the five patents only. The phrase "embodying said inventions or any of them" directly limits "soot blower and/or soot blower parts." The use of the phrases "said inventions" and "such apparatus" emphasizes the fact that the contract covers only products embodying some one of the five patents. In the first sentence of paragraph 6, the licensor and the licensee both agree that the prices to govern are those to be followed by the licensor in selling apparatus embodying some one of the licensed patents. Schedule "A" prices are obligatory upon appellant when at least one of the five patents is embodied in the equipment sold. The contract likewise binds appellee only as to equipment embodying one of the patents. Mutuality thus exists in this agreement. Appellants and appellee are not bound by the price schedule if they sell equipment not embodying any one of the licensed patents.

The construction of this contract does not involve mere technicality. As a practical matter, mutuality does not, and in an increasing degree will not, exist if this decree is enforced as rendered. The Garland patent, which covers appellant's automatic valve in head soot blower, was issued May 16, 1922, and will expire May 16, 1939. When this patent expires, under the decree below appellee will be free to build automatic valve in head soot blowers of the Garland type, and if they do not embody any one of the licensed inventions, it can sell them at whatever prices it wishes. Appellant, meanwhile, under the decree will be compelled to sell the same blower also embodying none of the licensed inventions, at Schedule "A" prices. Such a result seems to us inequitable.

Paragraphs 1 to 5 inclusive, and paragraphs 8 and 9, are stricken from the decree, and paragraphs 6 and 7 of the decree are affirmed, and the cause is remanded to the District Court with directions to adjudge costs in favor of appellant.

SIMONS, Circuit Judge (dissenting).

I am unable to concur. When the basic patents for automatic valve-in-head blowers and tubes of chromium alloy were adjudicated as valid and infringed by the appellees, the parties compromised their differences to avoid further litigation, and entered into the license agreement. Bayer secured rights under four minor patents and limited rights up to 18½ per cent. chromium under the Snow & Cox patent. This enabled it to make nonautomatic blowers with tubes of low-chromium content but did not permit it to compete with the superior apparatus of the appellant. To compensate for this, Bayer was given a 10 per cent. price differential. Neither at the time of the agreement nor for many years thereafter was the appellant making the nonautomatic blower, so that the differential permitted competition not with apparatus of the same type but with appellant's superior product. The prices fixed in Schedule A were on both licensed and unlicensed equipment.

Thomas, president of the appellant company, testified and also wrote in a letter in evidence, "There were many reasons for making this price differential—the two most important ones were, first, that we felt you should have a price advantage by reason of not building an automatic valve, and, secondly, that you should have a price advantage by reason of the fact that you were only permitted to build alloy elements containing not more than 18½% of chrome."

It is clear that without the price concession Bayer secured nothing by its license. Its rights under the minor patents were insufficient to put it on a fair trading basis with its competitor.

In 1934, the appellant bid on blowers required by the Navy and the city of Cleveland at prices lower than those in Schedule A and without notice to Bayer. It claims the right to do this because its tenders were on apparatus not including any equipment covered by the licensed patents. The court

held this to be a breach of the agreement since Schedule A was intended to and did include not only licensed apparatus but all of the licensor's product which at the time of the agreement entered into competition with the licensed equipment. I think its reasoning sound.

Paragraph 6 of the license is unambiguous in respect to the obligations of the licensee. It requires no reasoning to demonstrate it. It is not clear as to the obligations of the licensor. The latter's prices are the prices of the then current Schedule A without any express limitations therein to licensed equipment, unless the court reads into them the limitations expressed in the provision dealing with the licensee's obligations.

If not obvious, the ambiguity is at least latent, and it is settled law that the facts and circumstances under which a contract was entered into, and the manner in which it was practically construed by the parties may be looked to, not only to resolve an ambiguity which clearly appears, but to determine initially whether it in fact exists. Merriam v. United States, 107 U.S. 437, 2 S.Ct. 536, 27 L.Ed. 531; Ohmer v. Allen, 79 F.(2d) 942 (C.C.A. 6); Sampliner v. Maryland Casualty Co. (C.C.A.) 63 F.(2d) 332. "You cannot have a description in writing that will shut out all controversy, even with the help of a map." Shadlow v. Cottrell, L.R. 20 Ch.D. 90, quoted with approval by Chief Judge Cardozo in Marks v. Cowdin, 226 N.Y. 138, 123 N.E. 139, "The general rule in the interpretation of written instruments is that it is permissible for the expositor to place himself as nearly as possible in the position of the maker of such instrument, and to this end parol evidence is admissible to show the facts and circumstances surrounding such maker at the time the instrument was executed," Matthews v. LaPrade, 130 Va. 408, 107 S.E. 795, 799, quoted with approval in Colonial Ice Cream Co. v. Southland Ice Utilities Corporation, 60 App.D.C. 320, 53 F.(2d) 932. "The question the court is seeking to answer," says Prof. Williston (Contracts, vol. 3, 1780), "is the meaning of the writing at the time and place when the contract was made." This ought to be too elementary to require discussion.

An evil day has indeed dawned for the parties to a written contract when through mere ineptitude of its draughtsman, equity turns a deaf ear to the circumstances which disclose its true purpose and intent and the conscience of the chancellor sleeps. The decree below should be affirmed, at least so far as it governs the parties during the life of the Garland patent.