## G. Michael FLOTTE, et al.,
Plaintiffs-Respondents,

v.

## UNITED CLAIMS, INC., etc.,
Defendants-Appellants.

No. 45993.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 30, 1983.

Charles A. Hapke, Chesterfield, for defendants-appellants.

James M. Daly, Stephen G. Bell, St. Louis, for plaintiffs-respondents.

PUDLOWSKI, Presiding Judge.

Plaintiffs instituted their civil action for damages based on breach of their employment contracts. Defendant now appeals from the trial court's entry of judgment for plaintiffs in a jury-waived case. We affirm.

The crux of this appeal hinges on the identity and relationship between two corporations. United Claims Services, Inc. (hereinafter "UCS") was incorporated in 1970. United Claims, Inc. ("UC") was formed in 1974, during a period when USC was being reorganized.

UCS was a Missouri corporation engaged in the independent insurance adjustment business. Plaintiffs were employed by UCS as independent insurance adjusters from approximately mid-year 1973 until their resignations on February 4, 1974. On that day, they met with the president of UCS, Thomas R. Charity, who acknowledged the debt and stated that he would pay them the agreed wages for their work. He also mentioned to them that UCS was being reorganized. No one contests that plaintiffs were owed these undisputed amounts, but UCS never paid plaintiffs. Plaintiffs subsequently filed their suit against defendant UC to collect their unpaid wages on the

theory that defendant UC was and is a corporate continuation of UCS. The trial court agreed with plaintiffs' theory and ordered UC to pay the wages owed by UCS to plaintiffs.

The standard for appellate review in a court tried case requires this court to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or erroneously declares or applies the law. *Fountain v. Schlanker*, 651 S.W.2d 594, 595 (Mo. App.1983). We should set aside a judgment on the grounds that it is against the weight of the evidence with caution and with a firm belief that the judgment is wrong. "Weight of the evidence" means its weight in probative value, not the quantity or amount thereof; the weight of evidence is not determined by mathematics but depends on its effect in inducing belief. *Id.* at 595–96. The judgment is to be affirmed under any reasonable theory supported by the evidence. Further, the appellate court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. *Ware v. Ware*, 647 S.W.2d 582, 583 (Mo.App.1983). Deference is accorded the trial judge even if there is evidence which might support a different conclusion. *Id.* Within this scope of review, we consider the allegations of error.

Defendant has raised three points on appeal which present only one issue for our review—whether there was sufficient evidence for the trial court to find that the defendant UC was a continuation of the earlier corporation and, consequently, liable to plaintiffs for the debts of UCS, the predecessor corporation.

The record herein shows that Thomas Charity, the sole shareholder of UCS, was one of only four shareholders in UC. He was also president of UCS and vice president of UC in 1974 in which he had a controlling interest. He was a director of both UC and UCS. In April 1974, after informing plaintiffs in February that UCS was being reorganized, UCS consented to the use of the nearly identical name of UC

for its business. A few days later, UCS sold its furniture, fixtures, equipment and open files to UC. Mrs. Payne, the only employee other than plaintiffs in UC's St. Louis Office, was transferred to UC. George Shadle, an employee in another UCS office, also became an employee, officer, director and shareholder in UC. Two of UCS's major customers, State Security and Georgia Casualty, were also UC customers. Shortly after the "reorganization", UC temporarily occupied and did business from the Webster Groves office of UCS in St. Louis County, before transferring its operations to St. Louis City where it had been located and doing business under the name of Manufacturer. During the transition, UC continued to use the stationery of UCS with the word "Service" blotted out. Beyond this, customers were not notified by any mailings of changes in the corporate ownership. Moreover, UC billed and received payment following its takeover for work performed by UCS.

The issue of whether a corporation which acquires the assets of another company may be charged with liability for the latter's debts because there is substantial similarity in ownership or control as between the transferor and the transferee has been addressed before by our court. In *Brockmann v. O'Neill*, 565 S.W.2d 796, 798[2] (Mo.App. 1978), upon which both parties rely, we stated the following:

> First, the general rule of law in Missouri is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts. *Ingram v. Prairie Block Coal Co.*, 319 Mo. 644, 5 S.W.2d 413, 416 (1928); *Sweeney v. Heap O'Brian Co.*, 194

Mo.App. 140, 186 S.W. 739, 741 (1916). *See generally,* Annot., 49 A.L.R.3d 881 (1973); 19 Am.Jur.2d, Corporations, § 15.46 (1965).

*Brockmann* involved a situation where the payees of a promissory note sought to recover from the corporate successor on a note executed by its corporate predecessor (by then, in trusteeship). We found liability under the "mere continuation" exception to the general rule. Our emphasis was on the common identity of officers, directors and stockholders between the purchasing and selling corporations as the key element of a "continuation". We stressed that the incorporators of the successor also incorporated the predecessor and served as the directors, primary officers and major stockholders of both corporations. 565 S.W.2d at 798. We also relied on three other factors, including 1) the identical business operations, 2) the use by the transferee of the same trucks, equipment, labor force and supervisors of the transferor and 3) the failure to give notice of the transfer to either employees or customers.

Applying the *Brockmann* standard to the present fact situation, we feel that the record amply demonstrates the situation where there was a continuation of a prior transferring corporation.

██ UC does not take issue with the general law as applied by the trial judge, but rather takes exception to the factual conclusion drawn by the judge in his findings of fact. After a review of the record, we are convinced that the findings of fact of the trial judge are neither wrong or unsupported by substantial evidence. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). While some of the facts enumerated by the trial court are adopted without clear support in the record before us, no fact disputed by defendant UC is material to the trial court's determination and conclusion that UC is a corporate continuation of UCS. If alleged errors and findings are not inconsistent with and do not tend to contradict the findings of other facts which authorize the judgment, such alleged errors, although erroneous, are not prejudicial. Where certain findings of fact made by the trial court are sufficient to support the judgment rendered, the judgment should be upheld even though the trial court based the judgment on other insufficient findings of fact, provided such insufficient findings are not inconsistent with or contradictory to the findings which do support the judgment . . . a correct decision will not be disturbed because the court gave a wrong or insufficient reason therefore. *Holland Banking Co. v. Republic National Bank,* 328 Mo. 577, 41 S.W.2d 815, 819–820 (Mo. banc 1931). *Accord, Smith v. City of Clayton,* 579 S.W.2d 675, 677[4] (Mo.App.1979), citing *Webb v. St. Louis County National Bank,* 551 S.W.2d 869, 877[8] (Mo.App.1977).

We cannot, in fairness, permit the sole shareholder of one corporation to organize another and transfer all the corporate property from the former to the latter without paying all the corporation's debts. The new corporation can only be regarded as a mere continuation of the former under a different name. While it is true that no documentary evidence supports a finding of the formal dissolution of UCS, the evidence that UCS transferred substantially all of its assets in 1974 and no longer listed directors or officers after that time supports an inference that UCS for all practical purposes went out of business after making the transfer. All of the equipment, physical fixtures, personnel and assets of the old company were transferred to the new corporation. What remained of the old corporation was a shell of its former self, and, effectively, a defunct corporation. The fact that the old corporation did not formerly dissolve does not in and of itself make it any the less extinct as an active entity, *see Colonial Icecream Co. v. Southland Ice Utilities Corp.,* 60 App.D.C. 320, 53 F.2d 932 (D.C.Cir.1931), upon evidence that the newer corporation was for all intent and purposes the same as the older corporation with substantially similar shareholders, officers, and engaged in the same business representing the same two major customers. The trial court could properly conclude that UC was a corporate continuation of UCS

**390**

relying solely on the factors enumerated under the *Brockmann* test which are in evidence before us. We find no prejudice to UC in the inclusion by the trial court in its findings of fact of supererogatory material.

Affirmed.

SMITH and KELLY, JJ., concur.