**ROPER ELECTRIC COMPANY, Plaintiff–Respondent,**

v.

**QUALITY CASTINGS, INC., and Bagby Enterprises, Inc., Defendants– Appellants.**

No. 24081.

Missouri Court of Appeals, Southern District, Division One.

Nov. 30, 2001.

Thomas Pyle, Stockton, for Appellants.

Brent D. Green, Springfield, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

Roper Electric Company ("Plaintiff") sued Quality Castings, Inc. ("QCI"), and Bagby Enterprises, Inc. ("Bagby")[1], and alleged the two companies owed money to Plaintiff for services provided under an oral agreement. Specifically, Plaintiff sought payment for installation, cleaning, and refurbishing certain equipment belonging to QCI. Bagby was joined in the suit because QCI was no longer operating, and Plaintiff sought payment from Bagby as the corporate continuation of QCI.

After a non-jury trial, the court entered extensive findings of fact and conclusions of law. The court found Defendants jointly and severally liable for the services provided by Plaintiff in the amount of $20,135.46 with interest from September of

---

1. When we refer to both QCI and Bagby, collectively, we call them Defendants.

1994. Bagby appeals from the judgment alleging multiple claims of trial court error. We affirm.

In relevant part, the facts precipitating the lawsuit are undisputed. In 1994, QCI hired Plaintiff for the "repair and refurbishing of electrical control panels" in an iron foundry. There were no estimates discussed, nor was there a written contract of any kind. Plaintiff requested payment from QCI on several different occasions upon completion of the project in July of 1994. QCI never paid Plaintiff, and in October of 1995, QCI was experiencing financial difficulties owing taxes for the previous quarter to the Internal Revenue Service, three months back rent, and was three months overdue on mortgage payments to a bank on a small business loan.

When Bagby's attempts to purchase a candy store and then a printing business failed, it sought to buy QCI.[2] On October 16, 1995, Bagby and QCI entered into a "Sale of Assets Agreement." Pursuant to that agreement, all assets of QCI were "sold" to Bagby for the following consideration: (1) Bagby was to make payments on behalf of QCI to the bank holding a security interest in the assets; (2) Bagby agreed to employ the three shareholders of QCI; and (3) Bagby agreed to pay certain notes of the three shareholders and the corporation. Succinctly stated by Bagby's president, "There was no money changed hands. I assumed the assets in return for paying future payments on the [bank] loan."[3] Thereafter, the business of QCI was generally operated the same way only with the new name, "Bagby Enterprises, Inc. d/b/a Quality Castings."[4] Plaintiff then attempted to collect payment from Bagby, and those efforts went unfulfilled. As a result, Plaintiff filed the underlying suit.

## STANDARD OF REVIEW

This being a court-tried case, we review pursuant to the well-known principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). *Real Estate Investors Four, Inc. v. American Design Group, Inc.*, 46 S.W.3d 51, 56 (Mo. App.2001). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Sanders v. Ins. Co. of North America*, 42 S.W.3d 1, 8[3] (Mo.App.2000). Furthermore, we defer to the trial court's determination of witness credibility, and recognize that the court is free to accept or reject all, part, or none of the testimony presented. *Id.* at 8.

## DISCUSSION AND DECISION

On appeal, Bagby presents three separate points of trial court error. Our resolution of Point I, however, is dispositive of the appeal. This follows because each of Bagby's points is predicated on the same assumption, namely, there must be an identity of shareholders, officers, and di-

2. Bagby was incorporated in 1994 for the purpose of buying defunct businesses because the president "had been in management for years and years, and [he] always wanted to do it [himself]."

3. Bagby never assumed the loan and became liable therefor. Bagby merely had to pay the loan if it wanted to continue operating the business; if it stopped payment, then the original makers, the QCI shareholders, would still be liable.

4. The only difference appears to be that the three shareholders of QCI were no longer officers, directors, or shareholders, but remained employed as before in their job duties.

rectors of both corporations before the "corporate continuation" principle can attend. Bagby claims that both corporations must have "identical" representatives and that this "identity" is a "necessary element" to a corporate continuation theory. We disagree.

 The general rule of law in Missouri and most other jurisdictions is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former. *Brockmann v. O'Neill*, 565 S.W.2d 796, 798[3] (Mo.App. 1978); 19 C.J.S. *Corporations* § 657 at 314 (1990); 19 Am.Jur.2d *Corporations* § 2704 at 513 (1986); Ferdinand S. Tinio, Annotation, *Similarity of Ownership or Control as Basis For Charging Corporation Acquiring Assets of Another with Liability for Former Owner's Debts*, 49 A.L.R.3d 881 (1973). There are, however, four exceptions to this general rule, and the one presently at issue is where the purchasing corporation is merely a continuation of the selling corporation. *Brockmann*, 565 S.W.2d at 798[2]; 19 C.J.S. at 314–15; 19 Am.Jur.2d §§ 2705 and 2711 at 515 and 521; 49 A.L.R.3d at 883.

Bagby acknowledges these principles, but claims there must be evidence that the officers, directors, and shareholders were the same in both corporations before liability arose under the corporate continuation theory. The only authority Bagby cites for this proposition is PHILLIP G. LOUIS, JR., 26 MISSOURI PRACTICE: BUSINESS ORGANIZATIONS § 31.10 at 106 (2000). Bagby misreads this authority, but we need not detail his misconceptions. Suffice it to say, the following excerpt from the authority Bagby cites dispels his argument:

"Under this [corporate continuation] exception, the emphasis is on *various factors*, examples of which are: (1) Whether there is common identity of officers, directors and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors and name of the transferor and (5) whether notice has been given of the transfer to employees or customers." (Emphasis supplied.)

As this excerpt suggests, Missouri case law strongly leans toward the view that a lack of identity of officers, directors, and shareholders *does not preclude* a finding of corporate continuation, but that such identity is merely one factor in making this determination. Thus, in *Flotte v. United Claims, Inc.*, 657 S.W.2d 387 (Mo.App. 1983), the court in analyzing *Brockmann*, noted that the "emphasis was on the common identity" as the "key element," but also the case "relied on three other factors[.]" *Id.* at 389. The *Flotte* court then affirmed a judgment that imposed liability on the successor corporation on the basis of *"substantially similar* shareholders, officers, *and* [the new corporation] engag[ing] in the same business representing the same two major customers." *Id.* (emphasis supplied).

In *Chemical Design, Inc. v. American Standard, Inc.*, 847 S.W.2d 488 (Mo.App. 1993), the court affirmed a summary judgment that rejected an effort to impose liability on a successor corporation for the acts and omissions of a predecessor corporation. The court did not, however, base its decision exclusively on the lack of corporate officer and shareholder identity; rather, it balanced other factors, such as whether the same products were manufactured, whether notice was given to customers and employees of the new management, the fact that a new federal identification number was obtained, and "the extent of the involvement of prior

officers ... as *consultants* [.]" *Id.* at 493 (emphasis supplied). Based on an analysis of all these facts, the court concluded the successor corporation had no liability.

In *Young v. Fulton Iron Works Co.,* 709 S.W.2d 927 (Mo.App.1986), this court affirmed a judgment that refused to impose liability on a successor corporation based on a "corporate continuance" theory. In doing so, this court noted there were no common incorporators, directors, officer or shareholders, yet this court did not affirm the judgment based on that fact alone. Other factors that were weighed and considered "noteworthy" in the "corporate continuation" analysis included (a) the buying corporation did not acquire *all* of the assets of the selling corporation, (b) the selling corporation remained in business over a year after the initial transaction, (c) when the selling corporation did finally dispose of its remaining assets, it did not sell them to the original buying corporation; and (d) the original buying corporation was not created to buy assets of the seller; rather the buyer had been created nearly 116 years before the subject transaction. *Id.* at 940–41[4].

There is other authority to the same effect, i.e., that lack of common incorporators, directors, officer or shareholder is not necessarily dispositive of whether the corporate continuation principles attend. For instance, Fletcher Cyc Corp § 7124.10 (Perm Ed 1999) says: "The traditional indications of 'continuation' are: common officers, directors, and shareholders; and only one corporation in existence after the completion of the sale of assets. While the two foregoing factors are traditionally indications of a continuing corporation, *neither is essential.*" (Emphasis supplied.) Cases from other jurisdictions that are in accord with this view include, *Today's Child Learning Center, Inc. v. U.S.,* 40 F.Supp.2d 268, 272–73 (E.D.Pa.1998);

*Woodrick v. Jack J. Burke Real Estate, Inc.,* 306 N.J.Super. 61, 703 A.2d 306, 312–13 (1997); *G.P. Publications v. Quebecor Printing–St. Paul, Inc.,* 125 N.C.App. 424, 481 S.E.2d 674, 680–83 (1997); *Bingham v. Goldberg, Marchesano, Kohlman,* 637 A.2d 81, 91–92 (D.C.App.1994); *A.R. Teeters and Assoc. v. Eastman Kodak,* 172 Ariz. 324, 836 P.2d 1034, 1039–40 (1992); *H.J. Baker and Bro., Inc. v. Orgonics, Inc.,* 554 A.2d 196, 205 (R.I.1989); *Baltimore Luggage v. Holtzman,* 80 Md.App. 282, 562 A.2d 1286 (Md.1989); *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3, 7 (1977).

There are jurisdictions with a contrary view, that is, which hold there must be identity of officers, directors, and shareholders in both corporations *before* a corporate continuation can be found to exist. These jurisdictions seem to require this identity as a prerequisite to liability. *See, e.g. Vernon v. Schuster,* 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172, 1176–77 (1997); *Garcia v. Coe Mfg. Co.,* 123 N.M. 34, 933 P.2d 243, 247 (1997); *Pancratz v. Monsanto Co.,* 547 N.W.2d 198, 201 (Iowa 1996); *Kuempel Serv., Inc. v. Zofko,* 109 Ohio App.3d 591, 672 N.E.2d 1026, 1033 (1996). However, as stated earlier, Missouri does not ascribe to this latter view.

■ In Missouri, identity of the officers, directors, and shareholders for both corporations (although a substantial factor) is not a precursor to invocation of the "corporate continuation" doctrine. *Flotte,* 657 S.W.2d at 389; *Brockmann,* 565 S.W.2d at 798. *See* 26 MISSOURI PRACTICE § 31.10 at 106. We hold, therefore, that the lack of identity of officers, directors, and shareholders between QCI and Bagby was not, as a matter of law, fatal to Plaintiff's effort to collect QCI's debt from Bagby based on a "corporate continuation" theory; that although the "identity" factor is a "key" element to be considered, the lack thereof

(standing alone) does not mandate reversal of the trial court's judgment.

■ We turn now to the evidence supporting the trial court's finding that Bagby was the corporate continuation of QCI. All of the assets of QCI were transferred to Bagby; Bagby retained all of QCI's employees without notifying them of any change in ownership; neither Bagby nor QCI notified Plaintiff, as a creditor, of the change in ownership; Bagby continued the exact same business using the same equipment and had the same customers as QCI, but never notified them of the change; Bagby held itself out to the public as QCI by utilizing the same trade name, i.e., Quality Castings; Bagby retained the key employees in management positions because the president of Bagby admitted he knew nothing of the foundry business and the three shareholders had 60 years combined experience; Bagby took over the works in progress of QCI, collected the accounts receivable, operated in the same location, and had the same phone number as QCI; Bagby gave stock ownership to two of the retained key employees within 15 months of the transfer; and Bagby intended this transfer to be temporary and planned to sell the corporation back to two shareholders of QCI after a certain amount of time.

The foregoing is evidence that amply supports the trial court's judgment imposing liability on Bagby for QCI's debt. We deny Bagby's arguments to the contrary. Points I, II, and III are denied. The judgment is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.