# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3856

_____

Medicine Shoppe International, Inc.,

       Appellee,

v.

S.B.S. Pill Dr., Inc.;
Savannah B. Swartout,

       Appellants.

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted:  May 16, 2003

Filed:  July 22, 2003

_____

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

On July 29, 2002, Medicine Shoppe International, Inc. (Medicine Shoppe) sued S.B.S. Pill Dr. (Pill Dr.) and Savannah B. Swartout to enforce the terms of a contract between Medicine Shoppe and non-party Cape Fear Apothecaries, Inc. (Cape Fear). Medicine Shoppe alleged that Pill Dr., as the corporate successor or alter ego of Cape Fear, was obligated to identify and operate its pharmacy as a Medicine Shoppe

Pharmacy. Pill Dr. and Swartout appeal the district court's[1] preliminary injunction order enjoining them from identifying the pharmacy as anything other than a Medicine Shoppe Pharmacy. We affirm.

I.

On June 9, 1976, Swartout's father entered into a license agreement with Medicine Shoppe authorizing him to operate a Medicine Shoppe Pharmacy for a term of twenty years. On June 21, 1976, Swartout's father assigned this license agreement to Cape Fear. Cape Fear operated the pharmacy at 3127 North Main Street, Hope Mills, North Carolina (Swartout Property), for twenty years and renewed the license for a ten-year term beginning March 20, 1996. Soon after receiving her pharmacy license in 1996, Swartout became the pharmacist-manager of the pharmacy. Swartout became the sole shareholder of Cape Fear in 1998 and acquired sole ownership of the Swartout Property from her father in 1999.

In May 2002, Medicine Shoppe informed Swartout that it believed Cape Fear had under-reported its revenues and owed approximately $300,000 in unpaid license fees as a result. Soon thereafter, Swartout incorporated Pill Dr., acquired new permits, purchased new inventory, repackaged and separated Cape Fear inventory, removed Cape Fear's office equipment and furnishings, and purchased new office equipment and furnishings. Appellants began operating a pharmacy on the Swartout Property as Hope Mills Drug. Swartout provided patients a prescription transfer authorization form that stated:

> Due to unforeseen circumstances, this pharmacy will no longer be run as a "Medicine Shoppe". We are changing our name to "Hope Mills

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

Drug". You may expect the same care and treatment from our same staff. Only the name has changed to protect the innocent.

By signing this sheet, you are requesting that the remainder of your prescriptions as well as any refills you may have be transferred from "The Medicine Shoppe", formerly operated by Cape Fear Apothecaries, Inc.[,] to the new "Hope Mills Drug" operated by SBS PILLDR, Inc.

On July 2, 2002, the district court entered a temporary restraining order enjoining Cape Fear and its agents and employees from operating or identifying the pharmacy on the Swartout Property as anything other than a Medicine Shoppe Pharmacy. Medicine Shoppe Int'l, Inc. v. Cape Fear Apothecaries, Inc., No. 4:02CV01004CEJ (E.D. Mo. July 2, 2002). One day before a scheduled preliminary injunction hearing in that case, Cape Fear filed a chapter 7 bankruptcy petition.

After Cape Fear's bankruptcy filing, Swartout and Pill Dr. operated the pharmacy under the new name Hope Mills Drug but used the same telephone number. The pharmacy had the same customer base and the same employees as it had when operated as a Medicine Shoppe Pharmacy. Swartout was the president and sole owner of Cape Fear and is the president and sole owner of Pill Dr. In addition, Swartout was the pharmacist-manager of the Medicine Shoppe Pharmacy and of Hope Mills Drug. Pill Dr. paid Cape Fear's final month of expenses, including utilities, computer supplies, and drinking fountain rental. During the preliminary injunction hearing, Medicine Shoppe's regional operations manager testified that an operating pharmacy has three primary assets: its inventory, its customer files, and the value in its location due to the long-term presence of a pharmacy. Pill Dr. acquired Cape Fear's customer lists and files without paying compensation.

II.

"A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an

error of law, or an abuse of that discretion." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citations omitted). Our cases establish four factors that the district court is to consider in determining whether to grant injunctive relief: "(1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Nat'l Credit Union Admin. Bd. v. Johnson, 133 F.3d 1097, 1101 (8th Cir. 1998) (citing Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)). Our deferential review in this context arises from the district court's institutional advantages in evaluating witness credibility and weighing evidence, United Indus., 140 F.3d at 1179, and is limited to ensuring that no clearly erroneous finding of fact or error of law affected the district court's balancing of these four factors, Johnson, 133 F.3d at 1101 (citation omitted). On appeal, Pill Dr. contends that Medicine Shoppe failed to establish any of the four elements, but it places primary emphasis on its argument that Medicine Shoppe failed to show a probability of success on the merits.

A.  Probability of Success on the Merits

The license agreement between Medicine Shoppe and Cape Fear required Cape Fear to operate the pharmacy as a Medicine Shoppe Pharmacy. Because neither Pill Dr. nor Swartout signed the license agreement, Medicine Shoppe's breach of contract claim depends on whether Pill Dr. or Swartout is the alter ego of or successor in interest to Cape Fear. Although the pharmacy at issue is located in North Carolina, the license specifies that it is to be governed by and construed according to Missouri law. Accordingly, we look to Missouri law in this diversity action.

"The general rule in Missouri is that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's debts and liabilities."

-4-

<u>Chemical Design, Inc. v. Am. Standard, Inc.</u>, 847 S.W.2d 488, 491 (Mo. Ct. App. 1993). A successor corporation may be liable, however:

> (1) where the purchaser expressly or impliedly agrees to assume the debts or liabilities of the transferor; (2) where the transaction amounts to a merger or consolidation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently for the purpose of escaping liability for the debts and liabilities of the transferor.

<u>ARE Sikeston Ltd. P'ship v. Weslock Nat'l, Inc.</u>, 120 F.3d 820, 828 (8th Cir. 1997) (citing <u>Chemical Design</u>, 847 S.W.2d at 491); <u>Brockman v. O'Neill</u>, 565 S.W.2d 796, 798 (Mo. Ct. App. 1978). <u>Chemical Design</u> establishes that under Missouri law, transfer of all assets is a sufficient condition to invoke the general rule and its exceptions; however, the opinion is silent on whether transfer of all assets is a necessary condition. There appear to be no Missouri cases addressing the question of whether successor liability may attach to a successor that acquires substantially all, but less than the totality, of its predecessor's assets. The majority rule in other jurisdictions requires only "a transfer or sale of all, or substantially all, [of the predecessor corporation's assets]." <u>Grand Labs. v. Midcon Labs.</u>, 32 F.3d 1277, 1281 n.5 (8th Cir. 1994) (citations omitted). Swartout boxed up Cape Fear's inventory of drugs and stored the drugs, office equipment, and other fixtures belonging to Cape Fear in the pharmacy's store room. These items fell under the control of the trustee in bankruptcy. Despite the separation and storage of some of Cape Fear's assets, the district court found that "a substantial amount of Cape Fear's assets and business were transferred to Pill Dr., including the patient files, store location, and store furnishings."

Whether substantially all of Cape Fear's assets were transferred to Pill Dr. is a finding of fact that we review for clear error. Testimony at the preliminary injunction hearing indicated that the primary assets of a pharmacy are its inventory, its customer and patient files, and its location. Although Pill Dr. did not

automatically begin servicing Cape Fear's customers, it began operations in the same location, with the same phone number, employees, and pharmacist-manager, and invited Cape Fear's customers to transfer their prescriptions using a form indicating that only its name had changed. Appellants assert that Cape Fear had no leasehold or other enforceable interest in the property; however, the goodwill developed by a pharmacy operating in the same location for more than twenty-five years is likely to be a substantial part of the value of the pharmacy. See Polytech, Inc. v. Affiliated FM Ins. Co., 21 F.3d 271, 274-75 (8th Cir. 1994) ("Missouri courts generally have treated going concern value and goodwill value as intangible property interests.") (citing Flarsheim v. Twenty Five Thirty Two Broadway Corp., 432 S.W.2d 245, 257 (Mo. 1968)). We find no clear error in the district court's finding that "a substantial amount" of Cape Fear's assets were transferred to Pill Dr. Although Missouri courts have not expressly so held, we conclude that this finding is sufficient to invoke the rule of Chemical Design.

Having found that there was a substantial transfer of assets, the district court imposed liability on Pill Dr. based upon its determination that there had been a de facto merger between Pill Dr. and Cape Fear. Because we conclude that Pill Dr. is a mere continuation of Cape Fear, we do not decide whether there was also a de facto merger. Godfrey v. Pulitzer Publ'g Co., 276 F.3d 405, 409-10 (8th Cir. 2002) (stating that an appellate court may affirm "on any grounds supported by the record"). When the successor corporation "is merely a continuation" of the predecessor corporation, Missouri law imposes on the successor liability for the obligations of the predecessor. Philip G. Louis, Jr., 26 Missouri Practice: Business Organizations § 31.10 (2d ed. 2000) (citations omitted). In determining whether there is such a continuation, the reviewing court considers several factors, none of which is determinative:

> (1) [w]hether there is common identity of officers, directors and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment,

labor force, supervisors and name of the transferor[;] and (5) whether notice has been given of the transfer to employees or customers.

Id.; Roper Elec. Co. v. Quality Castings, Inc., 60 S.W.3d 708, 711-13 (Mo. Ct. App. 2001); see also Flotte v. United Claims, Inc., 657 S.W.2d 387, 388-89 (Mo. Ct. App. 1983). Swartout is the sole shareholder and director of both Cape Fear and Pill Dr. In addition, Swartout is the president of both corporations. Swartout incorporated Pill Dr.; her father incorporated Cape Fear. Pill Dr. operates the same type of business in the same location as did Cape Fear. Although Pill Dr. does not use the same equipment and trade name as did Cape Fear, it operates with the same phone number, employees, and pharmacist-manager as did Cape Fear. The last factor, whether notification was given to employees and customers, would weigh against a finding of a mere continuation, but for the way in which notice was given: "Only the name has changed. . . ." Thus, all five factors weigh in favor of finding that Pill Dr. was a mere continuation of Cape Fear. Accordingly, we find no error in the district court's conclusion that Pill Dr. may be held liable as Cape Fear's successor in interest.

B. The Threat of Irreparable Harm to Medicine Shoppe

Pill Dr. contends that the evidence before the district court was too speculative to support a finding that Medicine Shoppe would suffer irreparable harm if a preliminary injunction was not granted. Medicine Shoppe presented testimony that de-identification of the pharmacy creates consumer confusion and erodes consumer confidence in the Medicine Shoppe network of franchises. Customers of the pharmacy may be unsure whether they can get their prescriptions filled at that location. In addition, the closure of one franchise may make customers wonder whether other Medicine Shoppe franchises will continue to operate in the future. "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 741 (8th Cir. 2002) (applying Minnesota law). Harm to reputation and goodwill is difficult, if not

impossible, to quantify in terms of dollars. We cannot say that the district court clearly erred in finding that Medicine Shoppe established a threat of irreparable harm.

### C. The Balance of Harms and the Public Interest

As discussed immediately above, Medicine Shoppe was threatened with irreparable harm to its business reputation and goodwill – goodwill that had been developed during twenty-five years of continuous operation at that site. Pill Dr. and Swartout, on the other hand, had only recently begun operations as Hope Mill Drug, and therefore did not face risk to a well-developed and longstanding business reputation. The only evidence regarding potential harms to Pill Dr. and Swartout related to costs associated with licensing and re-identifying the pharmacy. The district court did not err by finding that the balance of harms favored Medicine Shoppe.

Having found that Medicine Shoppe had established a likelihood of success on the merits, the district court concluded that the public interest would be served by requiring Pill Dr. and Swartout to adhere to the obligations of the licensing agreement and thereby to preserve the integrity of the Medicine Shoppe trademark and associated goodwill. Although the public interest is not ordinarily implicated by concerns related to a business's good name, we agree that the public interest would not be served by permitting a party to avoid contractual obligations through the simple expedient of reincorporation under a new name.

### III.

Accordingly, the district court did not abuse its discretion by granting Medicine Shoppe's motion for a preliminary injunction. Appellants' motion to supplement the record on appeal is denied.

The judgment is affirmed.

A true copy.

      Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.