**Forrest EDWARDS d/b/a Strike Team Media, Appellant,**

v.

**BLACK TWIG MARKETING AND COMMUNICATIONS LLC d/b/a Black Twig Communications, Respondent.**

**No. ED 99581.**

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 5, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 2013.

Application for Transfer Denied Feb. 4, 2014.

514

Howard A. Shalowitz, St. Louis, MO, for appellant.

Thomas E. Schwartz, St. Louis, MO, for respondent.

ANGELA T. QUIGLESS, Judge.

## I. INTRODUCTION

Forrest Edwards d/b/a Strike Team Media (Plaintiff) appeals the judgment of the Circuit Court of St. Louis County in favor of Black Twig Marketing and Communications LLC d/b/a Black Twig Communications (Defendant) on Plaintiff's petition to pierce the corporate veil and establish successor liability. Plaintiff argues that the trial court erred in granting Defendant's "motion to set aside default judgment" because the trial court: (1) lacked jurisdiction to rule on the motion; (2) "exceeded its authority in that it acted as a one-judge court of appeals"; (3) improperly applied Rule 74.05 when the judgment was not a

default judgment; and (4) improperly applied Rule 74.06(b) because there was no mistake, inadvertence, surprise, or excusable neglect. Plaintiff also asserts that the trial court erred in rendering judgment for Defendant after trial because the evidence showed that Defendant purchased the most valuable assets of Kupper Parker Communications, Inc. (KPC) and was liable to Plaintiff as KPC's corporate successor.[1] We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Plaintiff filed a breach of contract action in a California state court against KPC. Plaintiff obtained a judgment against KPC and registered the judgment in the Circuit Court of St. Louis County, which gave the California judgment full faith and credit.

In 2007, Plaintiff filed a "petition to pierce the corporate veil and establish successor liability" against Defendant in the Circuit Court of St. Louis County. Plaintiff alleged that Defendant was obligated to pay him the full amount of his California judgment against KPC on equitable principles of successor liability. Defendant filed an answer to the petition.

On May 21, 2009, Plaintiff's counsel appeared for a scheduled settlement conference. Defendant's counsel did not appear. The trial court entered an order striking Defendant's pleadings and entering "default" in favor of Plaintiff. The trial court scheduled a "default and inquiry hearing" for June 3, 2009. The record reflects no notice of hearing was served upon Defen-

1. Plaintiff filed a motion to strike Defendant's brief for failure to comply with Rule 84.04(e) and (f), alleging that the brief does not: (1) contain headings identifying Plaintiff's points relied on; (2) include a statement of the applicable standard of review; (3) address Plain-

tiff's first point relied on; or (4) address the issue of the trial court "reversing a sanction from May 21, 2009." We took the motion with the case. Finding no merit to Plaintiff's allegations, we deny the motion.

dant. Between May 21 and June 3, the case was assigned to a different judge.

On June 3, 2009, the trial court held a "default and inquiry hearing." Counsel for Plaintiff appeared, but Defendant's counsel did not appear. The trial court entered judgment against Defendant on Plaintiff's petition.

On July 24, 2009, Defendant filed a "motion to set aside default judgment." Defendant alleged that it did not receive the trial court's May 21, 2009 order, notice of the June 3, 2009 hearing, or the June 3, 2009 judgment. Defendant claimed that it was entitled to relief under Rule 74.05(d). Defendant also asserted that it was entitled to relief under Rule 74.06(b) for the following reasons: (1) counsel's mistake and inadvertence in failing to attend the May 21, 2009 settlement conference; (2) the judgment was irregular because it was entered without notice; and (3) it was no longer equitable for the judgment to remain in force.

On September 1, 2009, the trial court held a hearing on Defendant's motion. The trial court granted the motion without specifying which rule was the basis for its decision. The trial court set aside the May 21, 2009 order and June 3, 2009 judgment. The parties continued to litigate the matter for over three years.

In November 2012, the trial court held a bench trial. Defendant presented the testimony of Bruce Kupper, who was formerly the chief executive officer of KPC, and was at the time of trial an employee of Defendant. Mr. Kupper testified that by March 2006, KPC was "broke" and in default on its obligations to Missouri State Bank and Trust Company (the "Bank"). Mr. Kupper stated that the Bank seized the assets of KPC that secured the loans and notified KPC of its intent to sell the assets. According to an asset purchase agreement introduced in evidence, the Bank sold certain seized assets to Defendant but specifically excluded from the sale KPC's cash and accounts receivable.

On December 31, 2012, the trial court entered an order and judgment. The trial court stated that "credible evidence was lacking that the sale of [certain] assets from the Bank to [Defendant] was a sale that would constitute 'all or substantially all' of KPC's assets, which is the first step in the analysis" of corporate successor liability. The trial court concluded that Defendant was not the successor company to KPC and was not liable for KPC's debt to Plaintiff. The trial court entered judgment in favor of Defendant. Plaintiff appeals.

## III.  DISCUSSION

### A.  Defendant's Motion to Set Aside Judgment

In his first four points on appeal, Plaintiff argues that the trial court erred on September 1, 2009 when it granted Defendant's "motion to set aside default judgment." We address these points out of order for ease of analysis.

"The trial court is vested with broad discretion when acting on a motion to set aside a judgment." *Greasel Conversions, Inc. v. Massa*, 399 S.W.3d 456, 458 (Mo.App.S.D.2013) (quotation omitted). "This Court should not interfere unless the record convincingly demonstrates an abuse of discretion." *Id.* "Judicial discretion is abused only when that ruling was clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (quotation omitted). "Further, the discretion not to set aside is a good deal narrower than the discretion to set aside, and thus an appellate court is

more likely to interfere with the trial court's decision when the motion to set aside the judgment has been denied." *Id.* (quotation omitted).

In his first point on appeal, Plaintiff argues the trial court lacked jurisdiction to rule on Defendant's motion to set aside the June 3, 2009 judgment because the court lost jurisdiction thirty days after the judgment became final. We disagree.

Rule 75.01 provides: "The trial court retains control over judgments *during the thirty-day period after entry of judgment* and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." Rule 75.01 (emphasis added). However, a Rule 74.06(b) motion "shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered." Rule 74.06(c). "Thus, Rule 74.06 provides specific limited authority for trial courts to alter or modify final judgments *more than thirty days old....*" *State ex rel. Willey v. Gum*, 902 S.W.2d 857, 859 (Mo.App.W.D.1995) (emphasis added). Likewise, "Rule 74.05(d) provides that a default judgment may be set aside upon motion made within a reasonable time not to exceed a year." *Lunde v. Am. Family Mut. Ins. Co.*, 297 S.W.3d 88, 92 (Mo.App. W.D.2009).

Here, Defendant filed the motion to set aside judgment on July 24, 2009, approximately fifty-one days after entry of the judgment. Since the motion was filed within one year after the judgment was entered, the motion was timely. Accordingly, the trial court had the authority to hear Defendant's motion. *See, e.g., Thompson v. St. John*, 915 S.W.2d 350, 357 (Mo.App. S.D.1996). Point one is denied.

■ Having found the court had authority to consider Defendant's motion to set aside judgment, we address Plaintiff's remaining points on appeal. In his third point, Plaintiff claims that the trial court erred in setting aside the June 3, 2009 judgment based on Rule 74.05. More specifically, Plaintiff asserts that the judgment was not a "default judgment" because Defendant filed an answer and, therefore, Rule 74.05 did not apply. While we agree with Plaintiff that Rule 74.05 did not apply, that does not entitle him to relief for the reasons discussed below.

On May 21, 2009, Defendant did not appear for a scheduled settlement conference, and the trial court struck Defendant's pleadings and entered "default" in favor of Plaintiff. A "default and inquiry hearing" was scheduled for June 3, 2009. Defendant did not receive notice of the June 3 hearing and was not present. After conducting the hearing, the trial court entered judgment in favor of Plaintiff. Defendant filed a "motion to set aside default judgment," asserting that it was entitled to relief under Rules 74.05(d) and 74.06(b). The trial court granted Defendant's motion and set aside the court's May 21, 2009 order and June 3, 2009 judgment without stating which rule was the basis for its decision.

■ Both Defendant and the trial court incorrectly referred to the June 3, 2009 judgment as a "default judgment." Rule 74.05 provides that a trial court may enter a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has *failed to plead or otherwise defend* as provided by these rules." Rule 74.05(a) (emphasis added). "Where a party has filed an answer, a subsequent judgment is not a default judgment, but a judgment on the merits." *Treetop Vill. Prop. Owners Ass'n v. Miller*, 139 S.W.3d 595, 600 (Mo.App.S.D.2004). Where a party has filed a responsive pleading but then

fails to appear at a hearing on the case, a resulting adverse judgment is a judgment on the merits even if the court has struck the party's pleadings. *In re Marriage of DeWitt*, 946 S.W.2d 258, 261 (Mo.App.W.D. 1997). Here, Defendant filed an answer to Plaintiff's petition. Therefore, the June 3, 2009 judgment against Defendant was a judgment on the merits rather than a default judgment, even though the trial court had struck Defendant's pleadings.

"Rule 74.05 only attends when the judgment entered was a 'default judgment.'" *Weidner v. Anderson*, 174 S.W.3d 672, 679 (Mo.App.S.D.2005). "To set aside a 'judgment on the merits,' the proper standard is found in Rule 74.06, not Rule 74.05." *Id.* Because the June 3, 2009 judgment against Defendant was on the merits, Rule 74.06, not Rule 74.05, governs the setting aside of the judgment.

█ Plaintiff argues the judgment on the merits should not have been set aside because Defendant was not entitled to notice of the June 3, 2009 hearing, in that it failed to appear for the May 21, 2009 court date. The issue of notice is critical to whether Defendant was entitled to seek relief from the June 3, 2009 judgment.

Rule 74.03 provides:

Immediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 43.01 upon each party who is *not in default for failure to appear* and who was *not present in court* in person or by attorney at the time of the entry of such order or judgment. . . .

Rule 74.03. Rule 43.01 provides that "[e]ach party shall be served with ... [e]very written notice, appearance, demand, offer of judgment, order, and similar paper that by statute, court rule, or order is required to be served." Rule 43.01(a)(3). "No service need be made on parties in default for failure to appear," with an exception not relevant here. Rule 43.01(a).

As noted above, Defendant filed an answer and was not in default for failure to appear nor was Defendant present in court on May 21, 2009. Thus, Rule 74.03 obligated the trial court to provide notice to Defendant of the May 21, 2009 order striking Defendant's pleadings, entering "default" against Defendant, and scheduling a "default and inquiry hearing" for June 3, 2009. *See Greasel Conversions*, 399 S.W.3d at 462; *Breckenridge Material Co. v. Enloe*, 194 S.W.3d 915, 920 (Mo.App. E.D.2006). The record before us contains no showing that the trial court provided such notice to Defendant, and Plaintiff concedes that he did not provide notice to Defendant. Accordingly, Defendant was entitled to seek relief from the June 3, 2009 judgment under Rule 74.06. *See* Rule 74.03; *Greasel Conversions*, 399 S.W.3d at 462.

Although Plaintiff maintains once the trial court struck Defendant's pleadings it was no longer entitled to notice, Plaintiff cites no cases supporting that proposition. Moreover, several of the cases Plaintiff cites are clearly distinguishable because they concerned a party who failed to file a responsive pleading. *See, e.g., Lunde v. Scardacci*, 175 S.W.3d 676, 678 n. 1 (Mo. App.W.D.2005). Point three is denied.

In his fourth point on appeal, Plaintiff contends the trial court erred in setting aside the May 21, 2009 order and the June 3, 2009 judgment based on Rule 74.06(b). More specifically, Plaintiff alleges "there was not a proper showing of mistake, inadvertence, surprise, or excusable neglect."

Plaintiff's argument rests on the incorrect assumption that the trial court relied on Rule 74.06(b)(1) in setting aside the judgment. Rule 74.06(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Rule 74.06(b).

■ In Defendant's motion to set aside the judgment, it claimed it was entitled to relief for three of the reasons in Rule 74.06(b): (b)(1) because of counsel's mistake and inadvertence in failing to attend the May 21, 2009 settlement conference; (b)(3) because the judgment was entered without notice and was therefore irregular; and (b)(5) because it was no longer equitable for the judgment to remain in force. The trial court granted the motion without identifying the bases for its decision. Specifically, the court made no finding as to whether the judgment was entered without notice or otherwise. Accordingly, "that issue is deemed found in accordance with the result reached." *Thompson*, 915 S.W.2d at 356. A finding that the judgment was entered without notice is consistent with the trial court's grant of Defendant's motion to set aside the judgment, and we will therefore proceed as if the trial court had made such a finding. This court will affirm the trial court's judgment if cognizable under any theory supported by the record. *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013).

■ "A judgment entered without notice to an adversely affected party is irregular and can be set aside pursuant to Rule 74.06(b)(3)." *Greasel Conversions*, 399 S.W.3d at 462. "This is because constitutional due process requires that for a judgment entered against a party not in default to be valid, there must have been notice of the trial setting and an opportunity to be heard must have been granted at a meaningful time and in a meaningful manner." *Id.* (quotation omitted). "Therefore, a party not in default who does not receive formal written notice of trial setting is entitled to a new trial, or to have a judgment entered against him set aside." *Id.* (quotation omitted).

Having determined that Defendant was not in default and did not receive notice of the trial court's May 21, 2009 order striking Defendant's pleadings and scheduling a "default and inquiry hearing" for June 3, 2009, we conclude that the June 3, 2009 judgment was irregular and Defendant was entitled to have it set aside under Rule 74.06(b)(3).[2] The trial court did not abuse its discretion in granting Defendant's motion to set aside the judgment. *See Greasel Conversions*, 399 S.W.3d at 462–63. Point four is denied.

In his second point on appeal, Plaintiff asserts the trial court erred in granting

2. Plaintiff asserts that if this court determines Defendant should have received notice of the June 3, 2009 hearing, "the only remedy is to affirm setting aside the 'judgment' of June 3, 2009, and reverse setting aside the 'sanction' of May 21, 2009, and remand the case for a hearing on the judgment damages because [Defendant's] counsel had actual and constructive notice of the May 21, 2009 conference." Plaintiff cites no authority to support this proposition. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *C.L. v. M.T.*, 335 S.W.3d 19, 24 (Mo. App.W.D.2011) (quotation omitted). Accordingly, we decline to address it.

Defendant's "motion to set aside default judgment," thereby setting aside the May 21, 2009 order, because the trial court "exceeded its authority in that it acted as a one-judge court of appeals by setting aside findings of factual issues and sanctions imposed by another judge sitting in that circuit." Since our analysis of the above points is dispositive of this issue on appeal, we need not consider Plaintiff's second point. Further, we note Plaintiff fails to develop this argument with support from relevant legal authority, preserving nothing for our review. Point two is denied.

### B. December 31, 2012 Judgment

In his fifth point on appeal, Plaintiff asserts that the trial court erred in rendering judgment for Defendant after trial because the judgment was not supported by substantial evidence, it was against the weight of the evidence, and it erroneously declared and applied the law. Specifically, Plaintiff argues that there was "more than ample evidence showing that the most valuable assets of KPC were sold to [Defendant]" and that the court "failed to apply the four separate theories of successor liability." We disagree.

Corporate successor liability is an equitable doctrine. *See Sweeney v. Heap O'Brien Mining Co.*, 194 Mo.App. 140, 186 S.W. 739, 741–43 (1916). Our review of a court-tried action in equity is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 263 (Mo.App.W.D.2010). Accordingly, this court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32.

Missouri courts recognize the traditional distinction between: (1) "corporate mergers or the sale and purchase of outstanding stock of a corporation, whereby preexisting corporate liabilities also pass to the surviving corporation or to the purchaser"; and (2) "the sale and purchase of corporate assets[,] which eliminates successor liability." *Chem. Design, Inc. v. Am. Standard, Inc.*, 847 S.W.2d 488, 492–93 (Mo.App.E.D.1993). Accordingly, "[t]he general rule of law in Missouri and most other jurisdictions is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former." *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 711 (Mo.App. S.D.2001). There are four exceptions to the general rule of nonliability: (1) when the purchaser expressly or impliedly agrees to assume the debts and liabilities; (2) when the transaction amounts to a consolidation or merger; (3) when the purchaser is merely a continuation of the seller; and (4) when the transaction is entered into fraudulently to escape liability for the debts and liabilities. *Chem. Design*, 847 S.W.2d at 491.

Plaintiff argues that the trial court erroneously declared the law when it stated that the first step in the successor liability analysis is determining whether there was a sale of all or substantially all of a corporation's assets. The parties have not cited, and our research has not uncovered, any Missouri cases directly on point.

"Most jurisdictions hold that a prerequisite to the imposition of liability against a corporation under any of the four exceptions to the nonliability of successors is a transfer or sale of all, or substantially all, the assets of the predecessor to the successor." *Grand Labs., Inc. v. Midcon Labs of Iowa*, 32 F.3d 1277, 1281 n. 5 (8th

Cir.1994).[3] We agree with these jurisdictions and hold that a transfer of all or substantially all[4] of the assets of one corporation to another is a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability. Our holding is merely a logical extension of established Missouri law on corporate successor liability, as our cases neither mention nor even hint that the four exceptions might apply in the absence of a transfer of all or substantially all assets. Our holding is also a logical extension of the rule that "[o]rdinarily, the separate legal identities of two corporations will be protected." *Bank of Belton v. Bogar Farms, Inc.*, 154 S.W.3d 518, 520 (Mo.App.W.D.2005). Imposing successor liability on a corporation acquiring less than substantially all assets of another corporation would violate this basic principle of corporate law.

Here, the Bank and Defendant[5] entered into an asset purchase agreement concerning some of the KPC assets the Bank had seized. Under the agreement, Defendant purchased: (1) tangible property, including computer equipment and office furniture; and (2) intangible property, including KPC's goodwill and client records. Mr. Kupper testified that Defendant paid the Bank approximately $90,000 for the assets it purchased.

The agreement specifically excluded KPC's cash and accounts receivable from the assets Defendant purchased. Mr. Kupper stated that as of the date the Bank seized KPC's assets, KPC's bank accounts were valued at approximately $700,000, and its accounts receivable were valued at slightly over $3.5 million. Mr. Kupper testified that the Bank collected about $1.95 million of the accounts receivable.

The asset purchase agreement and Mr. Kupper's testimony constitute substantial evidence supporting the trial court's finding that Defendant did not acquire all or substantially all of KPC's assets. Defendant did not purchase KPC's cash and accounts receivable, which together constituted at least $2.65 million of KPC's assets. Defendant paid around $90,000 for the tangible and intangible property it purchased. The parties presented no other evidence as to the value of the purchased

**3.** *See, e.g., Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir.1996) (applying Indiana law); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir.1991) (applying Oklahoma law); *Acheson v. Falstaff Brewing Corp.*, 523 F.2d 1327, 1330 (9th Cir.1975) (applying California law); *Evanston Ins. Co. v. Luko*, 7 Haw.App. 520, 783 P.2d 293, 296 (1989); *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 387 (Ind.Ct.App.1991); *Premier Capital, LLC v. KMZ, Inc.*, 464 Mass. 467, 984 N.E.2d 286, 292 (2013); *Bert Kuty Revocable Living Trust ex rel. Nakano v. Mullen*, 175 Wash.App. 292, 306 P.3d 994, 1005 (2013).

**4.** "There appear to be no Missouri cases addressing the question of whether successor liability may attach to a successor that acquires substantially all, but less than the totality, of its predecessor's assets." *Med. Shoppe*

*Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir.2003). "The majority rule in other jurisdictions requires only a transfer or sale of all, or substantially all, of the predecessor corporation's assets." *Id.* (quotation omitted); *see Gorsuch v. Formtek Metal Forming, Inc.*, 803 F.Supp.2d 1016, 1021 n. 9 (E.D.Mo.2011) (applying majority rule in case governed by Missouri law).

**5.** Neither party suggests that the fact that Defendant is a limited liability company should affect our analysis. "The general rule governing corporate successor liability and the exceptions to the rule may apply regardless of whether the predecessor or successor entity was a corporation or some other form of business organization." 15 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7122 (perm.ed., rev.vol. 2008).

assets. Specifically, Plaintiff presented no evidence showing that the assets Defendant purchased were worth more than $90,000.

Plaintiff asserts that the goodwill and client lists that Defendant bought constituted substantially all of KPC's assets because they were KPC's most valuable assets. To support this argument, Plaintiff relies on a federal case applying Missouri law: *Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801 (8th Cir.2003). *Medicine Shoppe* does not assist Plaintiff. There, the trial court determined that a corporation transferred a "substantial amount" of its assets to another corporation, "including the [pharmacy's] patient files, store location, and store furnishings." 336 F.3d at 804. The Eighth Circuit agreed, noting that evidence showed that the acquired assets constituted a pharmacy's "primary assets" and that "the goodwill developed by a pharmacy operating in the same location for more than twenty-five years is likely to be a substantial part of the value of the pharmacy." *Id.* Here, by contrast, Plaintiff presented no evidence tending to establish that KPC's goodwill and client lists constituted substantially all of its assets. Although Plaintiff contends that KPC's goodwill can be measured by the amount of Defendant's gross income for 2006 and 2007, Plaintiff points to no evidence in the record to support that contention.

We conclude that the trial court's determination that Defendant did not acquire all or substantially all of KPC's assets is supported by substantial evidence and is not against the weight of the evidence. Accordingly, we need not address the four exceptions to the general rule of nonliability for a corporation purchasing the assets of another. Point five is denied.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J., Concur.